Bratt vs. Swift and others.

BRATT, Respondent, vs. SWIFT and others, Appellants.

*May 3 — May 24, 1898.*

*Damages for conspiracy: Credibility of witnesses.*

1. One who is driven out of business by a conspiracy in restraint of trade, and compelled to sell his property for less than its value, is entitled to recover, as damages therefor, such sum as would measure his loss of profits and also loss by diminution in the value of his property by reason of the unlawful acts of the defendants.

2. To instruct a jury that "if a witness has sworn falsely as to any material matter you are at liberty to disregard his entire testimony," is erroneous, if not qualified by such a clause as "unless such testimony was corroborated by other credible evidence."

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

The plaintiff was a retail butcher at Superior, Wisconsin, between December 1, 1893, and April 15, 1895. On the latter date, he alleges that he was forced by the restraint of trade and the interference therewith, caused and brought about by the defendants, to sell out his business and abandon the same, and engage in other enterprises to make a living; that he had made net profits and gains in his business of about $4,000 a year over and above all expenses, and could have continued to have made that much had his business not been overthrown by the defendants as alleged; that they entered into an agreement, contract, and conspiracy to and with themselves, and with others, in restraint of trade,

in particular the retail butcher trade in the city of Superior and its suburbs, to menace, hinder, and control the plaintiff in his said business of a retail butcher, and drive him out of his means of livelihood, and lessen his profits, and ruin his business, which combination was called "Retail Butchers' Association," having a constitution and by-laws, showing a part, but not all, of the purposes of said conspiracy and combination; that some of its purposes were to monopolize the sale of butchers' meats in Superior, at the expense of the people, and to control that trade, and manage the same, solely in their own interests and others united with them, and to coerce plaintiff into joining said combination, monopoly, and conspiracy against his will, and to drive him out of business in case he refused to join, and, to that end, they reported to all the defendants that he (said plaintiff) would not join said combination, and that he had been guilty of unmercantile conduct, promoting excessive competition, house-to-house peddling, selling adulterated goods, etc., in consequence of which the defendants, the packing companies, refused to sell the plaintiff meats or goods of any kind in which they were dealing, except for prices far above those at which they sold and were selling to the other defendants and other members of said Butchers' Union, and refused to sell goods to plaintiff except for sums far in excess of the market price for goods he wished to purchase, and the retail butchers, in like manner, and in pursuance of said scheme, refused to sell to plaintiff goods they had for sale, and which he wanted to buy, except for prices far above the market prices, and in excess of prices charged by them to other people; that, in consequence of said conspiracy, plaintiff became unable to purchase meats and other goods needed in his business, and, to all practical intents and purposes, all wholesale dealers in Superior and Duluth were in the conspiracy, and his business was ruined, and he was forced to sell out, which he did April 15, 1895; that they sought to make him

join the Butchers' Union, at an expense of $25 a year, or, in the alternative, to ruin his business; and said boycott or refusal to sell was still maintained by the defendants as against the plaintiff, and he was prevented from engaging in the retail butcher business, and from earning a living thereby for himself and family, and whereby also he was compelled to make a forced sale of his building at the place aforesaid, and of his stock of goods and ice stored for use in his business, and lost thereby $600, to which extent he was specially damaged by the defendants by said conspiracy and other acts in pursuance thereof; and the defendants inflicted general damages to the plaintiff of about $1,300. The answer put in issue, and in substance denied, all the allegations of the complaint.

The evidence was very lengthy and elaborate, and a large number of witnesses were examined, their testimony extending over several hundred pages. It appeared from the evidence that the plaintiff sold and transferred to one Charles Eastlund, of Superior, his place of business, on Thompson avenue, horse and wagon, harness, ice, meat block, safe, and all tools in said building, etc., April 15, 1895, when he went out of the butcher business. Eastlund took possession of the place after the plaintiff sold out. The action was founded on the provisions of ch. 219, Laws of 1893. The plaintiff, in order to prove the damages that he alleged he had sustained, offered to, and did, give evidence as to the value of the horse, butchers' tools, scales, ice, chopping blocks, implements, and various other articles, at the time he sold out his said business to Eastlund; but the testimony was objected to as irrelevant, immaterial, and incompetent, and as tending to establish an improper measure of damages. The objection was overruled, and the defendants excepted. No evidence was produced showing the value of said several articles or pieces of property when the said plaintiff purchased the same, or what he paid therefor at the time he commenced his business.

The court instructed the jury that "the essence of the charge of conspiracy is a common design, by two or more persons, to do an unlawful act, by unlawful means;" that they should be satisfied of the existence of this common design to a reasonable certainty, and by a preponderance of the evidence, and, before they should find any defendant guilty of such charge, they should be likewise satisfied that he knew of such common design, or of a portion thereof, and that he aided or abetted in furthering it, or expressly or tacitly acquiesced therein; that, if the plaintiff was entitled to recover against any or all of the defendants, they should award him such sum as he had suffered in his business or property by reason of the alleged illegal acts of the defendants, and, among such elements of damage, they might include loss to his business, if any, from the time he claims they began to interfere therewith until the time he sold out; and if they found from the evidence that he was forced to sell out, and was obliged to sell at a loss, by reason of the alleged illegal acts of the defendants, then they might consider such loss as a part of his damages; but that, before they could award him damages, they must be satisfied from all the evidence that such damages were caused by reason of the alleged illegal acts of the defendants, or some of them,— that is, that such damages were the necessary, direct, and immediate result of defendants' acts,— and they would award him such sum, if any, as in their judgment the evidence warranted, bearing in mind that it was the duty of the plaintiff to dispose of his business and property, if forced by defendants to sell out, at market values thereof, or at a better price if obtainable; that the burden of proof was upon the plaintiff to satisfy the jury to a reasonable certainty, and by a preponderance of the evidence, of the truth of the allegations contained in the complaint,— that is, the burden of proof was upon the plaintiff to prove his case to a reasonable certainty, and by a preponderance of the evidence; that if, as to any controverted question of fact, the

evidence was so evenly balanced that they were unable to determine upon which side the truth lies, then, as to such controverted fact, they would find against the party upon whom the burden of proof lies to establish it.

There was evidence before the jury tending to sustain the issue on the part of the plaintiff, and tending to show that he was entitled to a verdict.

The court further instructed the jury: "If you are satisfied from the evidence that any witness has willfully sworn falsely to any matter or thing material to the issues in this case, then you are at liberty to disregard the entire testimony of such witness. There are two points in this instruction to which I call your special attention, namely — First, that such false swearing must be wilful and intentional, and not the result of inadvertence, forgetfulness, or misunderstanding; and, second, that it must relate to some matter or thing material to the issues of the case, and not to something which is not in any way connected with or material to such issues." The defendants excepted to said instruction.

The jury found a verdict in favor of the plaintiff for $450. A motion was made to set aside the verdict and for a new trial, which was denied. Judgment was entered upon the verdict in favor of the plaintiff, and against the defendants, from which the defendants appealed.

. For the appellants there was a brief by *Ross, Dwyer & Hanitch,* and oral argument by *W. D. Dwyer.*

*D. E. Roberts,* for the respondent, argued, among other things, that the defendants were liable for all the direct injury to the plaintiff resulting from their acts, though it could not have been contemplated as a probable result of such acts. *Brown v. C., M. & St. P. R. Co.* 54 Wis. 355. They were therefore liable for the plaintiff's loss of profits in business for two months, and for the difference between the price he got for the property sold and its real value. *Chicago, B. & Q. R. Co. v. Metcalf,* 44 Neb. 848. The charge in respect

to wilful false swearing was correct.  *Allen v. Murray*, 87 Wis. 46; *F. Dohmen Co. v. Niagara F. Ins. Co.* 96 id. 38; *Omaha & R. V. R. Co. v. Krayenbuhl*, 48 Neb. 553; *Little v. Superior R. T. R. Co.* 88 Wis. 402; *Cahn v. Ladd*, 94 id. 134.

PINNEY, J.  1. The admission and reception of the evidence offered by the plaintiff as bearing upon his damages, to show the value of the several articles or pieces of property which he sold to Eastlund, and the prices for which he sold them when he sold out his business, was erroneous.  The evidence in the form offered tended to establish an erroneous rule of damages, and one for which the defendants could not, under the circumstances as they appeared, be held liable.  The wrongful acts imputed to the defendants did not injure, or destroy, or deprive the plaintiff of the use of, his property. The most that can be said is that the acts of the defendants rendered the use of it less valuable in the particular business in and for which it had been purchased or procured.  There was no evidence offered or given to show that the personal property in the shop or place of business had been in any way injured, or had depreciated in value, by or on account of the alleged conspiracy. · The plaintiff was not entitled to measure his damages as if his property had been entirely destroyed.  He was entitled to recover, as damages, such sum as would measure his loss of profits and also loss by diminution in the value of his property by reason of the wrongful acts of the defendants; but such finding was required to be based upon legal evidence, and not upon mere conjecture or guesswork.

2. The instruction to the jury in respect to the credibility of the evidence — that, if they were satisfied from the evidence "that any witness had wilfully sworn falsely as to any matter material to the issues in this case, then you are at liberty to disregard the entire testimony of such witness"—

was erroneous, the court failing to add to it the qualifying clause, " unless such testimony was corroborated by other credible evidence." *Mercer v. Wright*, 3 Wis. 645; *Morley v. Dunbar*, 24 Wis. 185; *Allen v. Murray*, 87 Wis. 46. The rule on this point, as stated in *Morley v. Dunbar, supra*, has for many years been established, and is an absolute rule of evidence in this state.

For the reasons stated, the judgment of the circuit court. is erroneous.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.