## STATE v. REESE.

No. 2494.   Decided Sept. 10, 1913 (135 Pac. 270).

1. STATUTES—PARTIAL INVALIDITY. Laws 1911, chap. 62, relating to bastardy, is not invalid as a whole for failure to define bastardy, or the procedure to be followed is vague and uncertain.   (Page 452.)

2. BASTARDS—NATURE OF PROCEEDING—CIVIL OR CRIMINAL—CONVICTION—EVIDENCE. A bastardy proceeding under Laws 1911, chap. 62, is civil and not criminal; and hence the state is only required to establish accused's guilt by a preponderance of the evidence and not beyond a reasonable doubt.   (Page 452.)

3. BASTARDS—EVIDENCE—TESTIMONY OF PROSECUTRIX—SUFFICIENCY. Where, in a bastardy proceeding, the testimony of accused and prosecutrix was diametrically opposed as to the sexual intercourse, it was for the jury to determine which was the more worthy of belief; they being entitled to find for the state on prosecutrix's uncorroborated testimony.   (Page 454.)

4. BASTARDS — INSTRUCTIONS — WITNESSES — CORROBORATION. An instruction that, if the jury believed from the evidence that any witness who had testified in the case had knowingly and

willfully testified falsely to any material fact in the case, the jury might disregard the whole testimony of the witness or they might give such weight to the witness' testimony on such other points as they might think it entitled to was not erroneous as omitting the usual qualifying clause "unless the witness is corroborated by other credible evidence," since the instruction contained such limitation in substance. (Page 455.)

5. BASTARDS—TRIAL—VERDICT. Where, in a bastardy proceeding, the evidence was positive and unquestioned that there was only one act of sexual intercourse, an instruction as to the form of the verdict: "Your verdict in this case must be either guilty of having sexual intercourse with —— (the prosecutrix) and being the father of her bastard child as charged in the information, or not guilty of having sexual intercourse with —— (the prosecutrix) and being the father of her bastard child as charged, in the information, as your deliberations may result"—was not fatally defective as requiring the jury to find not only that accused was not guilty of such sexual intercourse but that he was not the father of prosecutrix's child in order to find for defendant. (Page 456.)

6. BASTARDS—NATURE OF PROCEEDING—ACCOMPLICE. A bastardy proceeding being civil in character, it was not error for the court to refuse to submit the case to the jury on the theory that prosecutrix was an accomplice and that her testimony with reference to the act of intercourse must be corroborated in order to convict. (Page 457.)

7. WITNESSES — CROSS-EXAMINATION — QUESTIONS TENDING TO DEGRADE. Where, in a bastardy proceeding, prosecutrix claimed that the sexual intercourse occurred immediately after an automobile ride on which she accompanied accused, who drove the car, and testified to misconduct of accused on the way home, whereupon accused introduced a witness, a married man, who was riding in the back seat of the machine with prosecutrix's sister at the time, and he testified that during the ride he neither saw nor heard anything improper between prosecutrix and accused, a question asked witness on cross-examination if during the ride he had not placed his own arm around prosecutrix's sister, which he was compelled to answer in the affirmative over objection, was improper as tending to degrade the witness in violation of Comp. Laws 1907, section 3431, providing that a witness need not answer a question which will have a direct tendency to degrade his character; the same having no relevancy to the issue.[1] (Page 458.)

---

[1]State v. Shockley, 29 Utah, 25, 80 Pac. 865, 110 Am. St. Rep. 639; State v. Vance, 38 Utah, 37, 110 Pac. 434.

8. BASTARDS—APPEAL—RULINGS ON EVIDENCE—PREJUDICE. The statements of prosecutrix and those of accused as to the question of intercourse being in direct conflict, error in requiring witness to answer such question was prejudicial to accused as the jury would be likely to place stress on the fact that accused's witness admitted that he too was guilty of questionable, if not improper, conduct and therefore would not give to his testimony the same credit that they might otherwise have done, when as a matter of law the witness' conduct could in no way affect his credibility. (Page 461.)

9. BASTARDS—INSTRUCTIONS—TESTIMONY OF PROSECUTRIX. In a bastardy proceeding, the jury is entitled to consider prosecutrix's evidence in accordance with all the facts and circumstances of the case and determine its credibility under the same rules that apply to other witnesses; and hence it was not error to refuse to charge that the jury should consider or weigh her testimony "with caution." (Page 461.)

10. BASTARDS—INSTRUCTIONS—WITNESSES—CREDIBILITY. Where, in a bastardy proceeding, the court had fully charged on the maxim "Falsus in uno, falsus in omnibus," as applied to the witnesses in general, it was not error to refuse to charge that if the jury believed from the evidence that the only evidence tending to prove accused's guilt was the testimony of prosecutrix, and that her testimony on any material point was untrue, then they were at liberty to disregard her whole testimony. (Page 462.)

11. BASTARDS—CONSTITUTIONAL LAW—JUDGMENT—BOND—COMMITMENT TO JAIL. Laws 1911, ch. 62, sec. 8, relating to bastardy, provides that, if accused shall refuse or neglect to give security after conviction as ordered, he shall be committed to jail, to remain until he shall comply with such order or shall be otherwise discharged, and that any person so committed may be discharged for insolvency or inability to give bond, provided that such discharge shall not be made within one year after commitment. Held, that such latter provision, requiring imprisonment of an insolvent defendant for at least a year for inability to give bond, was unreasonable and grossly oppressive, and for that reason void, but the invalidity thereof did not affect the balance of the act; and hence an insolvent so convicted, on proving his inability to perform the judgment, should not be incarcerated in the first instance, or if he had been incarcerated he should be discharged without reference to the period of his imprisonment. (Page 462.)

12. BASTARDS—JUDGMENT—SECURITY—STATUTES—REASONABLENESS. Bastardy Act (Laws 1911, ch. 62), providing that accused, if

convicted, may be compelled to give bond for the payment of a specified sum for the support of the illegitimate child, payable in installments covering a period of seventeen years, but authorizing a compromise with the mother after judgment by paying her any sum she might be willing to accept, in no event less than $500, was not unreasonable as requiring security for an unreasonable time.   (Page 465.)

13.  BASTARDS—PUNISHMENT—SUPPORT OF CHILD—AMOUNT.   While it is the duty of the court in bastardy proceedings under Laws 1911, ch. 62, on conviction of accused, to fix the amount in each case which accused shall be required to pay for the support of the child within the limit fixed by the statute, such amount should be fixed in accordance with the circumstances of each case, taking into consideration the means of accused, his ability to earn money, the lack of means of the mother, and the health and condition of both; the court taking testimony after verdict relative to the means, health, condition, and ability of the putative father to earn money and fixing such an amount, under all the circumstances, as is just and fair.   (Page 466.)

14.  BASTARDS—ISSUES—EVIDENCE.   In a bastardy proceeding, the sole issue is who is the father of the child in question; and hence other evidence of conduct of the parties occurring more than a year prior to the sexual intercourse in question is inadmissible.   (Page 467.)

15.  WITNESSES—CROSS-EXAMINATION OF ACCUSED.   Where, in a bastardy proceeding, accused denies having had sexual intercourse with prosecutrix, evidence to show his conduct and inclination toward her for a reasonable time prior to the time in question is only proper on cross-examination as showing the probability of the intercourse alleged.   (Page 467.)

16.  BASTARDS—EVIDENCE—PRIOR IMMORALITY.   Before accused can be found guilty in a bastardy proceeding, the state must prove by a preponderance of the evidence that he had sexual intercourse with prosecutrix within the period of gestation, and, unless this is done, evidence of his conduct and that of prosecutrix outside such period is irrelevant.   (Page 467.)

APPEAL from District Court, First District; *Hon. W. W. Maughan,* Judge.

Action by the State against Moses Reese for bastardy.

Judgment in favor of the State.   Defendant appeals.

REVERSED AND REMANDED.

*M. E. Wilson,* and *Fred W. Crockett* for appellant.

*A. R. Barnes,* Attorney-General and *E. V. Higgins* and *George C. Buckle,* Assistant Attorneys-General, for the State.

FRICK, J.

Some time prior to May 6, 1912, one ——, an unmarried woman whom we shall designate the prosecutrix, filed a complaint before a justice of the peace of Cache County, Utah, against the appellant, a married man, charging him with being the father of her unborn child. The justice held appellant to answer to the district court of said county, and on the 6th day of May aforesaid the district attorney of Cache County filed an information in the district court of said county in which he charged the appellant with having had unlawful sexual intercourse with the prosecutrix on the 29th day of August, 1911; that as a result of said intercourse said prosecutrix became and is pregnant with child, which if born alive will be a bastard, the maintenance and education of which will likely become a public burden, and that the appellant is the father of said child. To this information the appellant pleaded not guilty, and upon a trial to a jury after the child was born he was found guilty of being the father of said child. The court entered judgment adjudging him to be the father and required him to pay to the clerk of said court the sum of $200 for the first year and $150 each year thereafter for a period of seventeen years, payable in quarterly installments, for the support and maintenance of said child; that appellant enter into a bond with approved sureties to secure all of the payments aforesaid; and that in case he failed or neglected to pay said money or give the bond aforesaid "he be committed to the county jail of Cache County, Utah, until compliance with said demand or until discharged in due course of law." Appellant appeals from said judgment and has assigned numerous errors for which he insists the judgment should be reversed. We shall consider the errors deemed material

substantially in the order in which they are presented by appellant's counsel in their brief. We shall state the facts, so far as deemed necessary, in connection with the points decided.

It is contended that the act (chapter 62, Laws Utah 1911) under which appellant was prosecuted is invalid for various reasons: The first reason urged is that the act is invalid because it does not define bastardy, and that the procedure to be followed is vague and uncertain.

The act is copied bodily from the laws of the state of Illinois upon the subject of bastardy. See 1 Starr & Curtis Ann. Ill. Stats. (2d Ed.) 1896, p. 522 *et seq.* The only difference between the Illinois statute and chapter 62 aforesaid consists in the changes necessary to make said chapter conform to the jurisdiction of our courts and their procedure. The manner of lodging complaint before a justice of the peace, the hearing thereon and requiring the accused to appear before the trial court, and the information filed therein are, however, the same as provided by the Illinois law. The statute was in force in Illinois for almost forty years before it was adopted by the legislature of this state, and the courts of Illinois, as we shall hereinafter see, have passed upon almost every phase of it. Without going into the subject farther at this time, we are constrained to hold that the act is not invalid as a whole. The specific provisions of the act which it is contended are invalid will be taken up in their order hereafter.

It is next insisted that the evidence is insufficient to sustain the judgment of conviction. This contention is, to a large extent, based upon the theory that the proceeding is criminal, and that therefore appellant's guilt had to be established beyond a reasonable doubt. The trial court took this view and so charged the jury; and, although they found that the fact of appellant's guilt was established beyond a reasonable doubt, he nevertheless insists that the finding of the jury is without support in the evidence. It has repeatedly been held by both the Supreme and Appellate Courts of Illinois that the proceeding, al-

though prosecuted in the name of the state and criminal in form, is nevertheless civil, and that a preponderance of the evidence is sufficient to convict. (*Rawlings v. People,* 102 Ill. 475; *Davis v. People,* 50 Ill. 199; *People v. Starr,* 50 Ill. 52; *Johnson v. People,* 140 Ill. 350, 29 N. E. 895; *Gehm v. People,* 87 Ill. App. 158; *Lewis v. People,* 82 Ill. 104.) Under a law which is in many respects similar to the Illinois statute, the Supreme Court of Nebraska has laid down the same doctrine in the following cases: *Cottrell v. State,* 9 Neb. 125, 1 N. W. 1008; *Jones v. State,* 14 Neb. 210, 14 N. W. 901.

In 9 Neb. 127, 1 N. W. 1009, it is said:

"And (the action), being essentially a civil action, the better course is to conduct the prosecution in the name of the real party in interest. But in such a case the state is a mere trustee, and the real party in interest obtains the benefit of the judgment; the object of the action being merely to enforce the discharge of a civil and moral obligation, that of support by a father of his own child."

In view of what is said above, the proceedings in Nebraska are usually conducted in the name of the mother of the child against the putative father. But whether conducted in the name of the state or by the mother the procedure is the same and the rules of evidence and the quantum of proof applicable to civil cases control.

In passing upon the question now under consideration, the Supreme Court of Illinois in *Rawlings v. People, supra,* says:

"It is well settled by the decisions of this court that a prosecution under the bastardy act is a civil and not a criminal proceeding; that, though in form criminal, it is essentially of the nature of a civil action, the object being, not the imposition of a penalty for an immoral act, but merely to compel the putative father to contribute to the support of his illegitimate child."

Entirely apart from the fact, however, that the legislature of this state adopted the Illinois statute after the highest court of that state had held the prosecution and consequences

thereof to be civil and not criminal, we think it is manifest
that the legislature of this state did not intend the bastardy
act to be criminal in its consequences.

An unlawful sexual act, other than rape, is by our stat-
ute made a crime and can be punished as such. In the case
at bar the prosecutrix could have been punished for fornica-
tion while appellant could have been convicted and punished
for adultery. It was wholly unnecessary, therefore, to
enact another criminal statute to punish acts already made
punishable, but it was necessary to adopt some law whereby
the putative father of an illegitimate child could be com-
pelled to make provision for its support and education. Why
should not the fathers of illegitimate children be compelled
to provide for their offspring so far as this can be done by
law, when the fathers of legitimate children are by law re-
quired to do so? The proceeding is therefore intended to
enforce a moral obligation and is thus civil in its conse-
quences, and a mere preponderance of the evidence is suffi-
cient to support the verdict. In this connection it has
squarely been held by both the Supreme Court and the Ap-
pellate Court of Illinois that the uncorroborated testimony
of the prosecutrix is sufficient to support a verdict although
the accused may testify directly contrary to her statements.
The question is for the jury and they must ordinarily de-
termine which one is most worthy of belief. (*Davis v.
People, supra; People v. Starr, supra; Riggins v. People,*
46 Ill. App. 196; *Common v. People,* 39 Ill. App. 31. To
the same effect are *Dailey v. State,* 28 Ind. 285; *McClellan
v. State,* 66 Wis. 335, 28 N. W. 347.) And the decisions in
Nebraska are all to the same effect. The cases are collated
in the notes to sections 6300 to 6307 of 2 Cobbey's Ann.
Stat. Neb. 1907.

In this case the testimony of the prosecutrix and that of
appellant are diametrically opposed; she positively
testifying that he had sexual intercourse with her and       3
he as positively denying it. It was a question for the
jury to say which one was more worthy of belief and which
one under all the circumstances they would believe. The

contention, therefore, that the judgment should be reversed for the reason that the evidence is insufficient to support the verdict of the jury cannot be sustained.

Another contention is that the court erred in charging the jury as follows:

"If you believe from the evidence that any witness who has testified in this case has knowingly and willfully testified falsely to any material fact in this case, you may disregard the whole testimony of such witness, or you may give such weight to the evidence of such witness on such other points as you may think it entitled." It is insisted that the instruction is bad because it did not contain the usual qualifying clause "unless the witness is corroborated by other credible evidence."

Under our statute (Comp. Laws 1907, section 3147) the court in every case "must inform the jury that they are the exclusive judges of all questions of fact," and as a matter of course they are also the judges of the credibility of the witnesses and the weight to be given to their testimony when considered as a whole or of any particular part. These cautionary instructions, in view that they always do and always should limit the doctrine to the material evidence, very often may do harm while they seldom do any good for the reason that the jurors too often are left in the dark with regard to what is a "material fact." They have the right, and unless otherwise directed by the court are bound, to assume that all the evidence admitted by the court is material and, in doing so, may under such a charge, really disregard the testimony of a witness because he may have denied some fact which as a matter of law was not material to any issue in the case but which the jurors assumed to be material and also believed that his denial was false and hence fell within the maxim of *"falsus in uno,"* etc. We shall, however, illustrate this point further in discussing another assignment. Some courts have condemned such instructions when the qualifying clause aforesaid was omitted, while others have sustained them without such a clause. Among those cases condemning the charge without the qualifying clause are

the following: *Bratt v. Swift,* 99 Wis. 579, 75 N. W. 411;
*Miller v. State,* 106 Wis. 156, 81 N. W. 1020; *Chicago &
A. R. R. Co. v. Kelly,* 210 Ill. 449, 71 N. E. 355. Among
the cases that hold that the qualifying clause is not neces-
sary we cite: *State v. Mounce,* 106 Mo. 226, 17 S. W. 226;
*Minich v. People,* 8 Colo. 452, 9 Pac. 4; *Robert Burgess &
Son v. Alcorn,* 75 Kan. 735, 90 Pac. 239; *Atkins v. Glad-
wish,* 27 Neb. 841, 44 N. W. 37.

In the case at bar we think the court's charge, in substance
at least, contained the qualifying clause. We are not pre-
pared to say, however, that we should reverse a judgment
in any case for the sole reason that in giving such an in-
struction the court had omitted the qualifying clause there-
from. We do say, however, that, if the court deems such an
instruction proper in any case, it were perhaps better and
more enlightening to the jury if the qualifying clause or its
equivalent were incorporated therein. In view, however,
that the jury are the sole judges of the weight to be given to
the evidence and of the credibility of the witnesses, such in-
structions, as we have already said, are not of great im-
portance and should only be given in such cases where the
evidence is of such a character that in the judgment of the
trial court, in order to guide the jury, they should be in-
formed with regard to the maxim. This assignment, for
the reasons stated, must also fail.

It is next insisted that the court erred in charging the
jury as follows:

"Your verdict in this case must be either guilty of hav-
ing sexual intercourse with —— (the prosecutrix)
and being the father of her bastard child as charged
in the information, or not guilty of having sexual
intercourse with —— (the prosecutrix) and being the father
of her bastard child, as charged in the information as your
deliberations may result."

It will be observed that the court stated the proposition
to be found by the jury both affirmatively and negatively.
Appellant's counsel argue with much vigor that, before the
jury could find a verdict of not guilty under the foregoing

charge, they were compelled to find that the appellant did not have sexual intercourse with the prosecutrix as well as that he was not the father of her child. There is much force in this contention, and, if the facts were different, the charge might not only be erroneous but the error might be fatal. In this case, however, the evidence is positive and unquestioned that there was only one act of sexual intercourse, and the appellant, in order to be the father of the child in question, must of necessity have had intercourse with the prosecutrix at or about the time she testified he did. In a case where more than one man has had sexual intercourse with the prosecutrix within the period within which the child in question could have been conceived, such a charge might not only be erroneous but in all probability would be prejudicially so, for the reason that the jury might believe the accused guilty of having had sexual intercourse with the prosecutrix but might not believe that he was also the father of her child. As pointed out by the Supreme Court of Illinois in *Davis v. People,* 50 Ill. 199, the proper form of verdict is "guilty of being the father of the child." But it is also held that the finding merely that the accused is "guilty" or "not guilty" is responsive to the issue and is sufficient.

Another assignment is that the court erred in not submitting the case to the jury upon the theory that the prosecutrix was an accomplice and that therefore her testimony, in order to convict, must be corroborated with respect to the act of intercourse. We have already shown that this is a civil proceeding, and hence the court committed no error in refusing to submit the case to the jury as requested by appellant. It has frequently been held, as will appear from the cases we have already cited, that the testimony of the prosecutrix need not be corroborated in order to authorize a conviction. The foregoing also disposes of the contention that the court erred in its charge defining a reasonable doubt. This being a civil and not a criminal proceeding, appellant was not entitled to such a charge. But, entirely apart from the fact that he was not entitled to such

an instruction in this case, the court nevertheless committed no error in its definiton of a reasonable doubt.

It is further insisted that the court committed error in compelling one of appellant's witnesses to testify on cross-examination that he had "put his arms around the sister of" the prosecutrix while riding in an automobile with the appellant, the prosecutrix, and the sister aforesaid. The question arose as follows: The night in which it is claimed the sexual intercourse took place between the prosecutrix and appellant, the four persons above named went from Logan, Utah, in appellant's automobile to what is called Benson Ward, some six or eight miles distant from Logan and there attended a dance. After staying at the dance until about midnight they left there and with some friends went to the house of an acquaintance near the dance hall and there had something to eat. After staying at the house some time, the four, in the automobile aforesaid, started for their homes at Logan. When arriving there the witness, who, like the appellant is a married man, started home with the sister of the prosecutrix and left the latter and the appellant at the garage in which he placed the automobile. Immediately after the sister and the witness aforesaid had left the two alone at the garage, the prosecutrix says that the appellant had forcible sexual intercourse with her on the rear seat of the automobile. As soon as the act was ended, the two also went home and found the witness a few rods from the house to which he had taken the sister of the prosecutrix, returning therefrom to go to his home. The evidence is conflicting with regard to the time the prosecutrix and appellant were alone. It varies from ten to thirty minutes. Without passing upon the weight of the evidence, we desire to say that we are all agreed that if the intercourse occurred at the time stated by the prosecutrix, and as found by the jury, it was not a forcible intercourse as claimed by her. For the purposes of this case it is quite immaterial, however, whether the intercourse was forcible or otherwise. The prosecutrix had testified that in coming home from Benson Ward in the automobile the appellant had taken some

undue liberties and had made some indecent proposals to her. She and he were riding in the front seat of the automobile, he drivng the machine, while the witness and the sister of the prosecutrix were riding in the rear seat. The witness was called to testify with regard to the conduct of the appellant during the automobile ride and while they were at the dance and the house of the acquaintance aforesaid. The witness testified that he did not see any misconduct on the part of appellant, nor did he hear of any indecent proposals of any kind. This witness seemed to state quite frankly what occurred during the automobile ride. On cross-examination he was asked whether he did not at a certain time and place and to a certain person state that on the evening in question he had placed his own arm around the sister of the prosecutrix while riding in the automobile. Counsel for appellant objected to this question upon all the necessary grounds, but the court compelled the witness to answer the question, which he did by denying that he had made such a statement. Counsel for the state then asked the witness whether he in fact had not done so, and the court over appellant's objections compelled the witness to answer the question, which he did by admitting that he had done so. The state seeks to sustain the ruling of the court upon the ground that the question and answer were relevant and material as affecting the credibility of the witness. We cannot yield assent to such a contention.

We have a statute (Comp. Laws 1907, section 3431) which, under the heading of "Rights and Duties of Witnesses," provides:

"A witness must answer questions legal and pertinent to the matter in issue, though his answer may establish a claim against himself; but he need not give an answer which will have a tendency to subject him to punishment for felony; nor need he give an answer which will have a direct tendency to degrade his character, unless it be to the very fact in issue, or to a fact from which the fact in issue would be presumed. But a witness must answer as to the fact of his previous conviction for felony."

In the case at bar the question must have been propounded
to the witness because it was believed that it "will have a
direct tendency to degrade his character." This must be so,
since the answer, whether affirmative or negative, certainly
could not have had the remotest tendency to establish any
issue in the case or any fact from which the fact in issue
could be presumed. Nor could an answer which admitted
the fact affect the credibility of the witness. Nor could the
witness be impeached in case he falsely denied the fact.
Can any one seriously contend that, because the ordinary
man may be guilty of some act of impropriety or of ques-
tionable taste with a woman, he is therefore untruthful and
his testimony should be discredited? Such a claim if made
is entirely fallacious. The only purpose, therefore, of such
questions is to degrade the witness. This may not be done
under the guise of "affecting the credibility of the witness."
Proceedings in courts of justice should be conducted for the
sole purpose of ascertaining the truth, and the inquiry should
be limited to those matters which are relevant and material
to the issue, and witnesses who are called to testify should be
protected against such useless and unwarranted attacks. We
shall not pause now to review the authorities nor to cite the
numerous cases upon the subject. We shall content our-
selves with a quotation or two from a decision rendered
by the Court of Appeals of New York. That court in *Third
Gt. W'n Turnpike-Road Co. v. Loomis,* 32 N. Y. 132, 88
Am. Dec. 311, in passing upon the question, says:

"If the judgment of the court below be upheld by the sanction
of this tribunal, it will embody in our system of jurisprudence a
rule fraught with infinite mischief. It will subject every witness
who, in obedience to the mandate of the law, enters a court of
justice, to testify on an issue in which he has no concern, to
irresponsible accusation and inquisition in respect to every trans-
action of his life, affecting his honor as a man or his character as
a citizen."

The court then proceeds to state that whether such ques-
tions should be permitted and the extent thereof was hereto-
fore confined to the discretion of the trial court. The court
then continues:

"The judgment now under review was rendered on the assumption that it is the absolute legal right of a litigant to assail the character of every adverse witness, to subject him to degrading inquiries, to make inquisition into his life, and drive him to take shelter under his privilege, or to self-vindication from unworthy imputations, wholly foreign to the issue on which he is called to testify."

The court then proceeds to show that such a rule would be unjust and intolerable, and that it is the duty of the courts not to allow such questions to be propounded or answered. The rule, therefore, as it had formerly existed in New York is set aside.

We have, to some extent at least, discussed and approved the doctrine laid down by the New York court in the cases of *State v. Shockley,* 29 Utah, 25, 80 Pac. 865, 110 Am. St. Rep. 639, and *State v. Vance,* 38 Utah, 37, 110 Pac. 434. See, also, 3 Ency. Ev. 885, 887, and 888, where the question is discussed and where a large number of cases are collated.

In the case at bar the statements of the prosecutrix and those of appellant upon the question of intercourse, as we have seen, are in direct conflict. It may well be, therefore, that the jury placed considerable stress upon the fact that appellant's witness admitted that he too was guilty of questionable, if not improper, conduct, and they thus may not have given his testimony the same credit that they otherwise would have done, when, as a matter of law, his conduct in no way could have affected his credibility. We concede that there are a few sporadic cases which hold such questions proper, but sound reason as well as the great weight of authority are against such a doctrine. We are of the opinion that the court erred in overruling appellant's objection and in compelling the witness to answer, and that in view of the whole record the error was prejudicial.

It is further insisted that the court erred in refusing to charge the jury that they should consider or weigh the testimony of the prosecutrix "with caution." Why should her testimony be weighed or considered with caution any more than the testimony of appellant? The jury, under all the facts and circumstances, were the

judges of what weight should be given to the statements of either of them. The court did not err in refusing to so charge.

It is further contended that the court erred in refusing to charge as follows:

"The court instructs the jury that if they believe from the evidence that the only evidence tending to prove the guilt of the defendant is the testimony of ——— (the prosecutrix), and that her testimony on any material point is untrue, then the jury is at liberty to disregard her whole testimony."

Why should the testimony of the prosecutrix be singled out? The court had already charged on the maxim of "falsus in uno," etc. If it be said that the prosecutrix is directly interested in the result of the action and hence should not recive full credit for her statements, it is also true, as pointed out by the courts of Indiana and Wisconsin (*Dailey v. State* and *McClellan v. State, supra,* and *Kenney v. State,* 74 Wis. 260, 42 N. W. 213), that the accused has a more direct pecuniary interest in the result of the action than the prosecutrix, and that the weight to be given to the testimony of either one or both is therefore a question for the jury, to be determined from all the facts and circumstances, and cannot be controlled by the court through its charge. We are clearly of the opinion that the court committed no error in refusing to so charge and that it would have been error if the court had given it in the form proposed.

Finally it is contended that the law is invalid because it in effect permits imprisonment for debt, and that it is unreasonable in that, in case the accused is adjudged to be the father of the child in question and he refuses or neglects to secure the payments required of him by the judgment, he must be held in the county jail for the period of a whole year before he can be discharged on the ground of insolvency or inability to give security. Section 8 of the act reads as follows:

"In case the defendant shall refuse or neglect to give such security as will be ordered by the court, he shall be committed to the jail of the county, there to remain until he shall comply with such order or until otherwise discharged in due course of law. Any person so committed may be discharged for insolvency or inability to give bond, provided that such discharge shall not be made within one year after such commitment."

Under this section, as contended by appellant's counsel, the accused may not be discharged by any court until he has been in jail a year, although he may be utterly insolvent and unable to give the security required of him by the judgment.

We have already held that the proceeding is civil and not criminal in its purposes and consequences, and therefore punishment cannot be inflicted except where the putative father willfully fails or refuses to comply with the judgment of the court, and then only as for a contempt. In the first sentence of the section quoted, every power that is necessary to enforce the judgment and to require the accused to secure the payments he is adjudged to make is conferred. No reason is assigned, nor can there be, why a person who is adjudged to be the father of an illegitimate child should be imprisoned for a period of one year when it can be made apparent to the court at any time that he is hopelessly insolvent and utterly unable under any circumstances to secure the payments required of him by the judgment. If such an imprisonment is for the purpose of punishment in case of an insolvent, then it cannot be sustained, because punishment is not the purpose of the law. If it is not for punishment, it is unreasonable, because it, under such circumstances, deprives a person of his liberty without any reason whatever. It is true that the Supreme Court of Illinois, in *Rich v. People,* 66 Ill. 513, has squarely held that the imprisonment provided for in the law does not violate the constitutional provision against imprisonment for a civil debt. No doubt so long as the imprisonment is for the purpose of compelling the accused to comply with the demand of the court in case he neglects or refuses to do so, and so

long as it is not made to appear that by reason of insolvency he cannot pay and is unable to give the security required of him, the imprisonment cannot be held to be unreasonable and hence not illegal. In referring to this question in *Livingston v. People*, 48 Ill. App. 114, it is said:

"The imprisonment is a legal consequence of a failure or refusal to comply with the judgment—a means provided by law for the enforcement of the judgment."

This seems to us to be both good law and good sense. How can it be said, however, that imprisonment is a means for the enforcement of the judgment when it is made apparent that the accused is utterly unable by reason of insolvency or for lack of means to do so? Is not further imprisonment under such circumstances wholly without cause and thus unnecessary? So long as the accused merely refuses or neglects to comply with the judgment, his imprisonment may no doubt continue for an indefinite period, but where he convinces a court that he cannot comply he should be discharged from imprisonment. Indeed, if it is made to appear to the satisfaction of the court, before judgment, that the accused is insolvent and cannot for that reason obtain bondsmen or secure the payments required of him, the court should not make the order for imprisonment at all; or if such order has been made, and it is made to appear to the satisfaction of the court that the accused cannot by reason of his insolvency comply with the order, he should forthwith be ordered to be discharged. The accused may have a legitimate child or children to support. Why should he by reason of his imprisonment be deprived of the right to earn a livelihood for both the legitimate and the illegitimate children? Whether, in case of insolvency, the court can enter judgment or make an order requiring the accused to apply any part of his earnings to the support of the child is a question not before us, and we express no opinion upon it. Of course execution may always issue against the accused upon the judgment.

It is also contended that the law is unreasonable for the reason that it compels the accused to secure the payments imposed by the judgment for a period of seventeen years. It is argued that, while men may be willing to bind themselves for a reasonable time, but few, if any, are willing to do so for so long a period. In our judgment the argument is more plausible than sound. If it should be held that a law is unreasonable because it requires the party who is required to pay to give security, then all laws requiring security to be given to secure the payment of an obligation or judgment must be held unreasonable. What is the real purpose of the provision which requires the putative father to give security for the future payments, and what is its effect? There is but one purpose, and that is to enforce the judgment which otherwise would be an empty formality. Its effect is precisely the same as the giving of security is in any other case. In this case the court required the accused to pay a sum amounting to $2750, which is the largest amount which could be imposed under the statute, $200 of which is payable the first year, and the remainder at the rate of $150 each year for seventeen years, payments quarterly. The accused must therefore secure the payment of not more than the highest amount fixed in the judgment, which in this case is $2750. Can it be said that the law is unreasonable which requires security for such a sum, although payable in quarterly installments for a period of seventeen years? The effect of this provision is to compel fathers of illegitimate children to do no more than the fathers of legitimate children are required to do, namely, make provision for the support of their offspring. It is true that the fathers of legitimate children are not compelled to give security in advance, but this is so because they ordinarily make provision without such requirement, while the fathers of illegitimate children not only do not do so, but ordinarily they in every way seek to avoid the burden. Statutes requiring the parents of legitimate children to provide for and educate their offspring are becoming more and more

drastic, and we see no reason why the fathers of illegitimate children should not be compelled to support their offspring by any means available to the lawmakers.

It is suggested that, while the putative father may be both able and willing to pay, yet he may not be able to obtain the necessary sureties upon the bond required of him. If one who is charged with being the father of an illegitimate child desires to do so, he may either before or after judgment compromise with the mother of the child by paying her any sum she may be willing to accept, but in no event less than $500. There is a way, therefore, that the matter may be legally adjusted without giving bond, if such be the desire of the accused. Moreover, if at any time the child dies, the bond becomes void and the payments cease.

While in our judgment the last sentence of section 8 quoted above is unreasonable and oppressive and hence void, yet it is manifest from the whole act that the limitation contained in the sentence is not controlling, and could not have influenced the members of the legislature in voting upon the act. Indeed, it is very apparent that the whole purpose of it was to provide a method to enforce the judgment. The means are, however, already amply given in the first sentence of the section, and hence the last sentence may be considered as wholly unnecessary and thoroughly oppressive.

In concluding the opinion we desire to state that nothing is made to appear in this case why the trial court imposed the highest amount allowed by the statute. The framers of the law simply fixed a limit beyond which the courts cannot go.

It was undoubtedly their intention that the court should fix an amount in each case within that limit, but the amount fixed should be in accordance with the circumstances of each case, taking into consideration the means of the accused, his ability to earn money, the lack of means of the mother, and the health and condition of both. The purpose of the law is to provide means for the support and education of the innocent child. In fixing the amount,

the court should not place it beyond the ability of the putative father to respond, and thus defeat the very purpose of the law. The court, therefore, should in each case take testimony after verdict relative to the means, health, condition, and ability of the putative father to earn money, and fix such an amount as under all the circumstances may be fair and just.

We desire to add that the record in this case discloses that the court permitted the parties to enter into subjects which have no relevancy to any issue in cases of this character. The sole issue presented in such cases is: Who is the father of the child in question? Notwithstanding this the court admitted evidence of conduct occurring more than a year prior to the time when the alleged sexual act took place.

It may be proper upon cross-examination of the accused, if he denies having had sexual intercourse with the prosecutrix, to show his conduct and inclination toward the prosecutrix for a reasonable time prior to the alleged intercourse, but this is proper only as showing the probability of the alleged intercourse.

Before the accused can be found guilty, however, the state must prove by a preponderance of the evidence that he had sexual intercourse with the prosecutrix within the period of gestation, and, unless this is done, both his conduct and that of the prosecutrix outside of that period are ordinarily wholly immaterial and irrelevant. What his or her conduct with others outside of the period may have been is not relevant or proper. (*Scharf v. People,* 34 Ill. App. 400.) See, also, the Nebraska cases cited in Cobbey's Stat., *supra.* We make this suggestion in view that this case must be retried. The rules of evidence respecting materiality and relevancy should be applied in such cases as in all other cases.

For the reasons stated, the judgment is reversed, and the cause remanded to the district court of Cache County, with

directions to grant a new trial and to proceed with the case in accordance with this opinion.

McCARTY, C. J., and STRAUP, J., concur.