BOYCE, Appellant, vs. INDEPENDENT CLEANERS, INC., and others, Respondents.

*December 10, 1931—January 12, 1932.*

523

524

For the appellant there was a brief by *Wilbershide & Baumblatt* of Racine, and oral argument by *L. P. Baumblatt*.

For the respondents there was a brief signed by *Foley & Brach* of Racine, attorneys for Independent Cleaners, Inc., and others, *Simmons, Walker, Wratten & Sporer* of Racine (who also filed a separate brief), attorneys for Liberty Cleaners & Dyers, Inc., and *Kadwit & Lepp* of Kenosha, attorneys for Louis Plous; and the cause was argued orally by *Jerome J. Foley*.

FAIRCHILD, J. A nonsuit, like many of the law's instrumentalities, is especially designed to save the innocent from the annoyance of meeting frivolous or empty charges. The motion for a nonsuit should be granted unless, after giving the testimony the most favorable construction it will bear in plaintiff's favor, the court finds credible evidence from which a reasonable inference can be drawn in support of the case. *Kortendick v. Waterford,* 135 Wis. 77, 115 N. W. 331; *Mahar v. Montello Granite Co.* 146 Wis. 46, 130 N. W. 949; *Reiland v. Wis. Valley Elec. Co.* 202 Wis.

499, 233 N. W. 91. Where that evidence exists the motion ought not to be granted. The gentle influence of law and custom will prove ineffective in the accomplishment of its noble purpose unless individuals with rights to preserve and protect can readily find a way to combat organized tyranny in the commercial world, just as certainly as will our political rights fade away unless we keep open the avenue to the tribunals for their public vindication. Those accused may not be put upon explanation for anything brought forward by the complainant unless he sustains his cause with credible evidence creating reasonable inference of the truth of his contention, but when he meets these exactions he has the right to, and public interests warrant, a complete investigation.

Our chief inquiry in this case is whether or not, in an action for damages arising out of a conspiracy where the plaintiff has shown a combination, common interest, and object, together with acts on the part of defendants in the effort to accomplish the desired result, the court should require those accused to offer their defense.

The learned trial judge, in passing upon the motion for nonsuit, said:

"To justify a verdict in plaintiff's favor, however, there must be more than mere suspicion or conjecture. The ultimate fact of the corrupt agreement or the concert of unlawful action to a given end resulting in damage to the plaintiff may be inferred from established facts and circumstances; but such facts and circumstances must be proved by satisfactory evidence. There must be some basis upon which a finding that the alleged conspiracy existed in fact may reasonably rest."

This is substantially a correct statement of the law. The evidence before the court showed defendants to be united in their determination to compel the plaintiff to quit business; they held meetings to consider the matter; efforts to

accomplish this result were encouraged and urged generally by the group or association; some steps showing the interest of each and all were taken by Plous, Gentile, Horran, Ebert, Lachat, Marion, and Kaiser, each representing himself and others; some were efforts bearing the semblance of a peaceful effort to arrange matters in difference, but others were put forth clearly for the purpose of circumventing any effort on plaintiff's part to stay in business in Kenosha.

It may be that upon hearing from the defendants it will then appear that the plaintiff's case is not well founded or sufficient against some or any of the defendants; but the reasonable inference to be drawn from the foregoing and from other facts and circumstances in the record supports the plaintiff's case sufficiently at least to require a denial of the motion for a nonsuit.

The plaintiff was in business in Racine when these defendants induced him to go to Kenosha to take charge of the store they desired him to open. The understanding between them was, that when they decided to discontinue the store under their management he should have it to run under his own. This is the controlling testimony on the point of ownership at the time the motion for nonsuit was made. He leased the store for two and one-half years, moved his fixtures to Kenosha, and gave up a profitable business in Racine in order to complete the arrangement which they desired him to make. There does not appear to be anything surprising or unreasonable in such an arrangement as plaintiff claims was made. Just why members of the association or group should have been surprised at his claim that he was to succeed to the business in Kenosha is not very clear. They knew he was in business in Racine when they induced him to go to Kenosha; they knew he had at their request made the change and that it was his desire to stay in business. Still after the short period of three months they claim they expected him to retire at their command.

Upon his refusal he was told in effect he could not exist. When he asked about this threat, the reply by the one who presided over some of their meetings who was later active in interfering with his arrangements to get his work done, in the presence of all, was, "I never threaten anybody, I just tell them."

The record discloses a series of events calculated to interfere with the conduct of plaintiff's business and to destroy the service he was bound to render if he held his customers. These efforts could have had but one purpose, the accomplishment of which was desired by all, and the evidence warrants the conclusion that the defendants were interested, had knowledge of and all were taking part in bringing about the result. Ebert's acts were dictated by some one. Is there evidence from which a reasonable inference can be drawn as to who controlled him? When Ebert told the plaintiff the last of March he could not get his work done, Ebert had just come from a meeting attended by the defendants and was accompanied by two of them. This statement appears in the testimony: "There was some discussion about what the association was going to do to Ebert if he did not get Boyce out." "Then Frank told him (the plaintiff) that some of the boys had accused him of double-crossing them. They told him it was up to him to get him out of Kenosha." Ebert had been a friend of Boyce's, he had been doing Boyce's work. Why did he resort to what he himself styled "a dirty trick" to ruin plaintiff's business? The explanation must be found in the evidence that shows his concern, the Independent Cleaners, Inc., a member of the group of defendants.

When, by compulsion or voluntarily, one joins with others and performs for them, his acts become their acts. "Where several persons, having a common motive, are associated for some illegal purpose, an act or declaration of one of the parties in reference to the common object and forming part

of the conspiracy is admissible against the other." Jones, Comm. on Evidence (2d ed.) § 943; *Topolewski v. Plankinton Packing Co.* 143 Wis. 52, 126 N. W. 554.

Ebert had been the agent for the defendants at the time the store was opened. He promised the plaintiff to assist him. But at a critical time he refused to do plaintiff's work. Later, after getting plaintiff to return his work to Ebert's concern, he again refused to do it. His acts and his association with the defendants, their activity and insistence on Ebert's working with them to eliminate plaintiff, constitute evidence from which a reasonable inference can be drawn of a combination to accomplish a common object. The similarity of result accomplished through Plous and Horran's visit to the Milwaukee Wholesale Cleaners & Dyers to that which somebody compelled Ebert to work out supports plaintiff's case sufficiently to form a basis for admitting in evidence, as affecting all of the defendants, the statements of Ebert.

At the time the motion for nonsuit was made a confederation of two or more persons interested in closing plaintiff's store apparently existed and the evidence showed a determination to accomplish that very result shared in by all defendants. Their procedure was such that plaintiff's interest was wrongfully interfered with and finally destroyed. Evidence existed from which an inference could probably be drawn of concerted action on defendants' part to do something unlawful; that they combined for the purpose of wilfully and maliciously injuring the plaintiff in his business and by some means to hinder him so that he would be forced to accept a smaller amount for his property than he was willing to take, or to compel him to abandon his enterprise altogether. This sustains the case against the motion for nonsuit. Sec. 343.681, Stats.; *Hawarden v. Youghiogheny & Lehigh Coal Co.* 111 Wis. 545, 87 N. W. 472; *Reiland v. Wis. Valley Elec. Co., supra.*

As to the ownership of the business, the evidence further showed the plaintiff in possession under an arrangement which gave him a right to the store when defendants decided to abandon it. The existence of a dispute as to the full force and effect of the agreement would not furnish defendants ground for a motion for a nonsuit, and as to this the trial court so held. On the question of damages the trial court was of the opinion that the evidence showed a loss suffered by plaintiff. The evidence upon this question was not fully completed at the time the court entertained the motion. Some objections to the method of proof were still undisposed of; certain exhibits had been introduced subject to objection. There appears to have been an understanding that defendants' counsel was to examine original checks and entries so as to be able to cross-examine as to deductions, if any were proper to be considered, and then the trial court was to rule upon the objections. The trial court placed his ruling upon the motion for nonsuit on the ground that the evidence was not sufficient to sustain the charge of conspiracy, and said on the other points: "So far as the plaintiff's testimony is concerned, that after a certain time the Kenosha business was to be his, that question might properly be regarded affirmatively at this stage of the trial; so also as to the plaintiff's claim that he suffered loss."

The rule governing damages in conspiracy cases has been discussed in such cases as *Bratt v. Swift,* 99 Wis. 579, 75 N. W. 411; *Christensen v. Schwartz,* 198 Wis. 222, 222 N. W. 231, 223 N. W. 839; *Gatzow v. Buening,* 106 Wis. 1, 81 N. W. 1003, and we do not feel justified in discussing this matter further at this time.

We are of the opinion that evidence tending to show conspiracy existed, that it was not given its proper significance, and that the motion for nonsuit was erroneously granted.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.