493 P.2d 604

**STATE of Utah, Plaintiff and Respondent,**

**v.**

**Theryl JUDD, Defendant and Appellant.**

**No. 12586.**

Supreme Court of Utah.

Jan. 24, 1972.

Jim R. Scarth, of Pickett, Scarth & Pickett, St. George, for defendant and appellant.

Vernon B. Romney, Atty. Gen., David S. Young, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CALLISTER, Chief Justice:

This action was commenced in accordance with the provisions of Section 77–60–1, U.C.A.1953, of the Bastardy Act, whereby a complaint, under oath or affirmation, by a pregnant, unmarried female is made to a justice of the peace, who thereupon issues a warrant against the person so accused. Defendant was thus brought before the court, examined, and bound over to the district court by information. Defense counsel filed a motion challenging the service of process and asserting several objections to the proceedings. The trial court denied the motion and overruled the objections; this court granted defendant's petition for an interlocutory appeal.

On appeal, defendant asserts that the trial court erred when it denied the defense motion to quash the service of process on the ground that no summons had been issued and served upon defendant in

accordance with Rule 3, U.R.C.P. Defendant reasons that since this court has characterized an action under the Bastardy Act as civil in nature, the action must be commenced in accordance with the Rules of Civil Procedure.

■ The proceedings, under this act, although prosecuted in the name of the State and criminal in form, are civil in nature, since the purpose of the Bastardy Act is not to inflict punishment by imprisonment or fine, but to compel the father of the child to support it during its tender years.[1]

Under the common law, the putative father owed no duty of support to his illegitimate child; today, however, statutes have been enacted in almost every jurisdiction to provide for filiation or bastardy proceedings to determine the paternity of an illegitimate child and to compel its maintenance by its putative father.[2]

■ In Alsen v. Stoner,[3] the court observed that the proceedings under the Paternity Act (which are initiated under a procedure similar to that in Utah) are of a special statutory origin and are independent of the Criminal Code and of the Civil Practice Act to the extent that specific provisions are found in the Paternity Act.

Remedies, which are conferred by statute in derogation of the common law, may be enforced only in the manner prescribed in that statute.

■ In the instant action, the jurisdiction of the court was invoked under the specific procedure provided by this remedial legislation, the trial court did not err by its denial of defendant's motion to quash service of process.

Defendant further asserts that Sections 1, 2 and 3 of the Bastardy Act (Title 77, Chap. 60) have been repealed by implication by passage of the Uniform Act on Paternity, Chap. 45a, Title 78, U.C.A.1953, as amended 1965. These two acts are substantially the same except for the manner of initiating the proceedings; the Bastardy Act provides for arrest, arraignment, and sufficient surety to assure appearance at the trial; under the Uniform Act on Paternity, the proceedings are initiated by the filing of a petition, Section 78–45a–2. The Bastardy Act was enacted in 1911 and the Uniform Act on Paternity in 1965, defendant urges that there is an irreconcilable conflict between the provisions of the two statutes and therefore the later enactment takes precedence over the prior one.

---

1. State v. Reese, 43 Utah 447, 135 P. 270 (1913) ; State v. Anderson, 63 Utah 171, 224 P. 442 (1924) ; State v. McKnight, 76 Utah 514, 290 P. 774 (1930).

2. 10 Am.Jur.2d, Bastards, § 68, pp. 895–896.

3. 114 Ill.App.2d 216, 252 N.E.2d 488, 490 (1969).

The Uniform Act on Paternity as the name implies is a uniform act which the legislature adopted in its entirety with one significant exception; the following provision in Section 17 was deleted:

. . . and all acts and parts of acts inconsistent with this Act are hereby repealed.[4]

■ There appears therefrom an express intention upon the part of the legislature to retain the Bastardy Act, and there is no justification for a determination that the legislature intended to repeal the earlier act.

It is a rule of statutory construction that where there are two or more statutes dealing with the same subject matter they will be construed so as to maintain the integrity of both. Repeal by implication is not effected unless the terms of the later enacted law are irreconcilable with the former.[5]

Under the Bastardy Act, the mother is the sole person who may make the complaint; under the Paternity Act, the mother, child, or public authority chargeable by law with the support of the child may file a petition. The mother, alone, is granted two alternative remedies to procure not only child support but her hospital and medical expenses incurred during her pregnancy and delivery of the child. Under the Bastardy Act, the State proceeds on the mother's behalf, and there is a provision requiring sureties to assure defendant's appearance at the trial. The legislature has acknowledged the unique circumstances of the mother or pregnant woman and offered her two alternative remedies. She may seek the aid of the State and have it proceed on her behalf or seek private legal counsel and proceed as any other legal action. The trial court did not err in overruling defendant's objection, since the two apparently conflicting acts may be reasonably construed so as to reconcile and give effect to each.

Finally, defendant asserts that the proceedings under the Bastardy Act against him constituted a denial of equal protection of the laws as guaranteed by the Fourteenth Amendment of the Constitution of the United States. Defendant's objection centers on the complaint, arrest and bail procedures of the Bastardy Act. He urges that both acts are designed to compel the putative father to support his offspring and that it constitutes a form of invidious discrimination by permitting the mother or pregnant woman to determine which proceedings should be initiated. He urges that this court declare Sections 1, 2 and 3

4. 9B U.L.A., Uniform Act on Paternity, § 17, p. 528.

5. McCoy v. Severson, 118 Utah 502, 508, 222 P.2d 1058, 1061 (1950).

of the Bastardy Act unconstitutional. In other words, defendant contends that he was denied equal protection of the laws when this action against him was initiated by a procedure criminal in form, while other putative fathers similarly situated were served by the less severe civil process.

The courts have ascribed to the arrest provisions of bastardy statutes as for security purposes, but this factor does not alter the proceedings from a civil to a criminal status because the object of this remedial legislation is not punishment by fine or imprisonment but a judgment compelling support.[6]

■ The State has granted to the mother or pregnant woman two alternative remedies. A "remedy" is defined as the means authorized by law to be employed in preserving or enforcing a civil right; it is the procedure by which relief is obtained.[7] In State ex rel. Wilson v. Preston[8] the court explained:

. . . The cause of action itself is distinguishable from the form it assumes in its prosecution in the courts. The facts constitute the cause of action, and the legal form used to enforce the action is the remedy. . . .

In Arizona Copper Co. v. Hammer,[9] the State of Arizona had provided injured workmen with three alternative remedies; the employers asserted that this system denied them equal protection of the laws because it conferred upon the employee a free choice among several remedies. The court rejected this argument and responded that an election of remedies is an option very frequently given by the law to a person entitled to an action; an option normally exercised to the claimant's own advantage as a matter of course.

■ In the instant action, there is a rational basis to support the legislative determination that an unmarried pregnant woman may deem herself insecure and desire a means whereby she can be assured of the appearance of the putative father at the trial. The legislature has preserved this remedy for her benefit, but it has also granted her an alternative remedy if she prefers to proceed under the Paternity Act. These two alternative remedies do not deny defendant the equal protection of the law.

6. Pelak v. Karpa, 146 Conn. 370, 151 A. 2d 333, 335 (1959); State v. Mottet, 73 Wash.2d 114, 437 P.2d 187, 188 (1968).

7. 36A Words and Phrases, Remedy, pp. 552–557.

8. 173 Ohio St. 203, 181 N.E.2d 31, 36 (1962).

9. 250 U.S. 400, 430–431, 39 S.Ct. 553, 559–560, 63 L.Ed. 1058, 1071 (1918).

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis" it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." [Citation] "The problems of government are practical ones and may justify, if they do not require rough accommodations—illogical, it may be, and unscientific." [Citation] "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." [Citation]

. . . the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy.

. . . It is enough that a solid foundation for the regulation can be found in the State's legitimate interest. . . .[10]

The trial court did not err in its rulings in the instant action; this case is remanded for further proceedings.

TUCKETT, ELLETT, HENRIOD and CROCKETT, JJ., concur.

10. Dandridge v. Williams, 397 U.S. 471, 485–486, 90 S.Ct. 1153, 1161–1162, 25 L.Ed.2d 491 (1970).