# Ex parte NESSON.

Pen. Code, § 16, makes all persons capable of committing crimes except those therein specified. Section 325 defines rape as an act of sexual intercourse, first, where the female is under 18, etc. **Held,** that section 325 does not render a female under 18 incapable of committing a sexual crime, and hence, on the trial of the father of such a female for rape upon her, it was her constitutional right to refuse to answer whether her father had had sexual intercourse with her, for the reason that it would tend to convict her of incest, and she could not be denied such privilege on the theory that section 325 rendered her incapable of committing incest, and therefore her answer could not possibly incriminate her.

Gorson, J., dissenting.

(Opinion filed, Feb. 23, 1910.)

Original application for a writ of habeas corpus by Grace Nesson against J. G. Miles, sheriff of Brookings county. Applicant discharged.

*Philo Hall,* for applicant. *Olaf Eidem,* for respondent.

WHITING, P. J. One Grace Nesson applied to this court for a writ of habeas corpus directing one J. G. Miles, as sheriff of Brookings county, to make his return to the court showing by what authority he held said Grace Nesson in custody. The writ issued, the said sheriff made his return thereto, and the said Grace Nesson answered such return.

The facts herein are undisputed. The father of the applicant was upon trial before the circuit court of Brookings county upon an information charging him with having committed the crime of rape, committed upon the person of said applicant, a girl under the age of 18 years, to wit, 15 years old. The applicant, having been called by the state as a witness, was sworn, and, after answering several introductory questions, was asked: "Well, now, on or about August 9th did your father have sexual intercourse with you?" The applicant answered: "I refuse to answer, for the reason that it would tend to incriminate me." Other questions were asked having the same purport as the above; and, although the court ordered the applicant to answer the same, she steadfastly refused, even after being warned that she by such refusal rendered herself liable to punishment for contempt, her refusal each time being based on the same ground as above. The circuit court finally ordered the applicant committed to the custody of the sheriff for contempt of such court on account of her refusal to answer the questions asked. It appears from the statement of the said circuit court made to the said applicant that it was the opinion of such court that, inasmuch as the applicant was under the age of 18 years at the date inquired about, she could not be capable of committing the crime of incest, and therefore any answer she might make could not possibly tend to incriminate her. This is the view urged before this court in support of such commitment; it being contended that the statute of this state making it a crime to have carnal knowledge of a female under the age

of 18 years renders any female under that age incapable of committing a sexual crime. On the other hand, the applicant contends that the said statute in no manner affects the legal capacity of a female to commit any crime, and in no manner excuses her from the consequences of her acts.

One needs but to consider a moment the consequences that may flow from a holding supporting either view to recognize the great importance of this question. If the applicant is right, then whenever a person is charged with rape, incest, or adultery with a female under the age of 18 years and above 7 years of age, such female, if she can be induced to close her lips to all questions, can often prevent the person charged from receiving merited punishment. And this may result even when the state would willingly refrain from any prosecution of such female child. Under our statutes there is no provision empowering the court or prosecuting officer to grant to a witness immunity from prosecution in cases of this kind. On the other hand, if by our statute a female under 18 years of age is, as claimed on behalf of the sheriff herein, conclusively presumed incapable of committing a sexual crime, we have this condition in this state: A girl of 17 years of age, who has fallen and become a common prostitute, may lead her younger brother of 15 or 16 years of age to have sexual intercourse with her. She remains, in the eye of the law, as pure as the driven snow. He becomes a felon, liable to punishment for either rape or incest. A man may marry a girl of less than 18 years of age; she can live in open and notorious sexual relations with other men, and flaunt her shame and disgrace in the eyes of her husband and before the public, until she reaches 18 years of age. The husband cannot procure a divorce upon the ground of adultery; neither has he the right to refuse her his bed, for, if he does, it would be desertion upon his part. Other illustrations could be given to show the unconscionable results that might flow from holding against the applicant herein. Unless driven to such conclusion by the clear import of the words of our statute, we certainly cannot presume our lawmakers in raising the so-called "age of consent" ever intended to render such conditions possible; ever intended, while guarding the girls of our

state, and through them the public, from the lust of the ravisher
and from dangers flowing from their own lack of judgment or
of virtue, at the same time to tear down that restraint erected
against their own weakness of flesh, the restraint found in all wise
penal statutes fixing penalties for wrongs done.   Statutes fixing
an age for females below which any party having sexual inter-
course with them will be guilty of rape, regardless of whether
the female consents to such act of intercourse, are common to all
states, having come to us from the common law with such changes
as changing moral sentiment has from time to time demanded.
In this, as in many other states, the age fixed is 18 years.   We
might well, in the language of the court of a sister state when it
was speaking of another statute, ask: "Why was the arbitrary
age of 16 [eighteen] fixed in this state? Not certainly because the
parties [females] then for the first time became doli capax [hav-
ing knowledge of right and wrong].   They would have been
liable to have been punished for murder at a much earlier period."
Section 16 of the Revised Penal Code of this state provides as
follows: "All persons are capable of committing crimes, except
those belonging to the following classes: (1) Children under the
age of seven years.   (2) Children of the age of seven years, but
under the age of fourteen years, in the absence of proof that at
the time of committing the act or neglect charged against them,
they knew its wrongfulness.   (3) Idiots.   (4) Lunatics, insane
persons, and all persons of unsound mind, including persons tem-
porarily or partially deprived of reason, upon proof that at the
time of committing the act charged against them they were in-
capable of knowing its wrongfulness.   (5) Persons who com-
mitted the act, or made the omission charged under an ignorance
or mistake of fact which disproves any criminal intent.   But
ignorance of the law does not excuse from punishment for its
violation.   (6) Persons who committed the act charged without
being conscious thereof.   (7) Persons who committed the act,
or made the omission charged, while under involuntary subjection
to the power of superiors."   It may well be asked why a person,
who under our law would be capable of committing practically
every other crime known to our law, should not be held capable

of committing incest or adultery, where it is shown that she does not come under any of the above exceptions. We can conceive of no rational reason.

Turning now to section 325, Rev. Pen. Code, being the section we are called upon to interpret, and we find it reads, so far as material to this inquiry, as follows: "Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either of the following circumstances: (1) Where the female is under the age of eighteen years." What is there in the wording of the above to indicate that the Legislature intended to say that a female under 18 years of age was incapable of consenting? What the Legislature did say was virtually this: "The man shall be guilty of rape where the female is under the age of eighteen years, *whether the act of intercourse is with her consent or not*"—in other words, the Legislature made her consent immaterial; made that consent which, coming from a female over 18 years of age, would be a complete defense to the crime charged, when coming from a female under that age a mere nullity, so far as the man is concerned. This statute does not presume to declare that it shall be conclusively presumed that all females under 18 years of age are virtuous, or that they are mentally incapable of determining the element of right and wrong as relating to sexual acts, and therefore mentally incapable of consenting to such acts, but it declares a rule of public policy, under which, as stated above, it attempts to protect all females of immature age, and through them the public, from the consequences, not only of their lack of judgment, but lack of virtue where the same may be lacking; but it in no manner follows that the female who knowingly and willfully commits the act of sexual intercourse shall not be as liable criminally therefor as her older sisters would be for the same act.

In Nebraska it is rape for a man to carnally know a female "under the age of eighteen years, *with her consent* unless such female child * * * is over fifteen years of age and previously unchaste." This statute clearly recognizes the legal ability of the female to consent, but renders such consent a nullity as a defense for the man. Missouri has a statute similar to Nebraska, ex-

cept the words "with her consent" are omitted, and "fourteen" is inserted in place of "fifteen." It must be conceded that the omission of "with her consent" does not in any manner alter the effect of the law any more than adding the words "with or without her consent" to our statute would change the meaning or effect thereof. Could it be held in Nebraska or Missouri that a girl of 15, then unchaste, could be liable for incest or adultery, while the same girl, if she should reform and become, in the eye of the law, at 17 a chaste girl, and should then willfully commit an act that 2 years before would be a crime, would not be guilty of any offense, and this simply because the lawmakers have said to the males you must not have sexual intercourse with a virtuous child who is under the age of 18? It is therefore clear that the so-called "age of consent" statutes do not in any manner attempt by law to fix an age under which a female is mentally incapable of consent, as do the statutes declaring a minor incapable of entering into a binding contract; but such statutes do fix an age below which her consent to an act of sexual intercourse is immaterial so far as it bears upon the guilt of the other party to the act. The common expression used by the courts "that the female is conclusively presumed incapable of consenting to the act of sexual intercoure" is inaccurate. It would be more correct to say that the consent of the female is void (State v. West, 39 Minn. 321, 40 N. W. 249) ; that is, void as to the male. The applicant, therefore, being liable to punishment for incest if her act was voluntary and upon trial she could not show that she came under one of the exceptions named in section 16, Rev. Pen. Code, supra, it was her constitutional right to refuse to answer the questions asked, and the learned circuit court had no right or authority to hold her in contempt for such refusal. The order of commitment was therefore wrongful, and the applicant is entitled to a discharge therefrom.

We have referred to the evils which might flow from this holding, but it is easy for the Legislature to prevent all danger along this line. Let it but pass an act authorizing the proper officer or officers to grant absolute immunity from punishment for any crime which the witness' evidence may tend to show her

guilty of, and when such order of immunity is made, her constitutional privilege ceases.   This will leave the law so that all are punishable for their criminal conduct, and yet make it possible, when it is deemed that the ends of justice justify it, to exempt the less guilty from punishment in order that just punishment may be meted out to the other.

Let an order discharging the applicant from custody issue.

CORSON, J., dissents.