In re SADLEIR.

SADLEIR v. YOUNG, Sheriff.

No. 6083.   Decided December 31, 1938.   (85 P. 2d 810.)

**292**

*Harley W. Gustin* and *Ralph B. Ottenheimer,* both of Salt Lake City, for plaintiff.

*Brigham E. Roberts,* Asst. Dist. Atty., of Salt Lake City, for defendant.

For opinion on rehearing see 97 Utah 313, 94 P. 2d 161.

MOFFAT, Justice.

It appears from the petition that the minor, in whose behalf the petition is filed and the writ is sought, is seventeen years of age. The minor was called as a witness in the case of *State of Utah* v. *James A. Kaddas,* then pending and being tried in the District Court of the Third Judicial District of the State of Utah, Salt Lake County. James A. Kaddas was charged with the "crime of carnally and unlawfully knowing a female over the age of thirteen years and under the age of eighteen years," alleged to have been committed on the 27th day of July, 1938,—the said minor being the female.

To the charge the defendant had entered a plea of not guilty. At the trial one witness had been called on behalf of the state who had testified in substance that "on the early hours of the morning of July 27, 1938, he saw the minor lying on her back in the rear seat of an automobile in a reclining position with one leg upon the seat and her other leg upon the floor of said car with her clothes lifted to her waist; that the defendant James A. Kaddas was standing or kneeling over her with his pants unbuttoned and his private parts exposed." Following the testimony of this witness, and, as the only other witness, up to that time,

the minor was called as a witness on behalf of the state and, being sworn, was questioned. After some preliminary questioning the witness was asked: "Did you have any sexual relations with the defendant on July 27, 1938?" To which question the witness replied, "No." Counsel for the prosecution then on behalf of the state asked the witness the following question: "Did the defendant James A. Kaddas have sexual intercourse with you at any time between July 4th, 1938 and July 27th, 1938?" To this question counsel for defendant interposed the objection of "immateriality, incompetency and irrelevancy."

The minor, represented by independent counsel, then refused to answer upon the ground urged by her counsel, claiming the constitutional and statutory privilege of remaining silent where her answer might tend to incriminate her and also degrade her upon a collateral matter. The trial court advised the witness that the ground of claimed privilege was not available to her, and that she would be required to answer the question or be punished for contempt. The witness still declined to answer upon the ground claimed. Whereupon the witness was adjudged in contempt of court and incarcerated until she might speak.

The record submitted to this court discloses that counsel for the state was not in a position to claim surprise, as it was shown that the state had a transcript of the witness' testimony taken at the preliminary hearing and had been advised that the claimed privilege would be asserted on the ground stated. The following colloquy is part of the record before us:

"Mr. Rogers: 'Now he cannot claim surprise; that is the point we have been arguing about all the time.'

"The Court: 'You say Mr. Romney knew what her testimony was at the preliminary hearing?' Mr. Romney: 'I did, your Honor, and I have the transcript.'

"The Court: 'You cannot indulge in the presumption that she would perjure herself here.'

"Mr. Romney: 'I have her statement, your Honor, taken when this case was filed, that is entirely different from her testimony below;

and counsel comes and says if she is required to testify here it will probably lay her open to a perjury charge; * * *'."

Other matters are shown by the petition and record, all of which are made part of the petition by reference. A demurrer was filed, thereby admitting the facts and making the issue one of law.

The state had alleged the offense had taken place upon the 27th of July, 1938, and had, before calling the witness, introduced testimony as to that date: *Thus by election, it had bound itself to that date.* In *State* v. *Hilberg*, 22 Utah 27, 61 P. 215, at page 34 of the Utah report, 61 P. page 216, the following occurs:

"The general rule in criminal cases subject to exceptions is well settled that, where one specific offense is charged, the commission of other offenses cannot be proven for the purpose of showing that the defendant would have been more likely to have committed the offense for which he was on trial, nor as corroborating the testimony relating thereto; but where the offense consists of illicit intercourse between the sexes, such as is charged here, or in case of incest, adultery, or seduction, courts have relaxed the rule, and hold that previous acts of improper familiarity between the parties, occurring prior to the alleged offense, were admissible *as explaining the acts, and as having a tendency to render it more probable that the act charged in the information was committed, though such acts would be inadmissible as* independent testimony." (Italics added.)

The record discloses that when the question was asked to which claim of privilege was made, counsel for the defendant Kaddas interposed the general objection of immateriality, incompetency and irrelevancy. As the evidence of the case then stood that objection should have been sustained. Had such ruling been made, the necessity of claiming privilege would not have arisen on the part of applicant for this writ. Whether the objection of relevancy or materiality should have been sustained resolves itself into a question of order of proof. Unless the state had other proof than that already produced it had failed to make even a prima facie case. The evidence of the officers showed

contemplation and intention on the part of the participants to commit the act charged, but fell short of showing that it had taken place. Then, when the petitioner herein was asked on direct examination by counsel for the state whether the act had been committed on the date testified to by the officers, her answer was negative and the state was left without a case, unless other and further testimony was to be produced. Such matter may be a question of order or proof. In any event, before the petitioner was required to answer after claimed privilege, in the spirit of the privilege provided by statute it would have been in the interest of orderly procedure to have inquired whether the state had other independent testimony, and then determined whether the witness should be subjected to the humiliation of answering if her answer was affirmative; because, without more, had her answer been affirmative, the court would not have been justified in permitting such case to go to the jury. The most that could be said for the testimony as thus contemplated would have been that it permitted the weighing of a permissible inference against evidence showing an opportunity and a contemplated act and the negative testimony of the witness. The danger of permitting such situation going to a jury is that a defendant may be found guilty of an offense similar in character upon a different date, but not charged, or, if charged, excluded by the election the law makes upon the introduction of testimony as to the act proposed to be proved.

Aside from the foregoing question, should the witness have been required to answer or suffer contempt punishment after her claim of privilege? We are of the opinion her claim of privilege should have been allowed by the court. We need not discuss the history and development of the rule that no one is bound to become his own accuser, ∎ etc. Those interested in a scholarly and detailed history of the principle will find such in a treatise by John H. Wigmore in 5 Harvard Law Review, beginning at page 71; and in 15 Harvard Law Review, beginning at page 610.

The principle behind the statute is declared in Article 1, section 12 of the Constitution of Utah, where among other things it is stated: "The accused shall not be compelled to give evidence against himself." This applies as well, before indictment or information filed as afterward. In the instant case the witness is not the accused. This provision of the constitution is referred to only as it tends to form a background affecting the interpretation of the statute relating to the duty of witnesses to answer or affirm under oath and the right a witness has to claim privilege under the statute.

Section 104-49-20 of R. S. U. 1933 requires that:

"A witness must answer questions legal and pertinent to the matter in issue, though his answer may establish a claim against himself; but he need not give an answer which will have a tendency to subject him to punishment for felony; nor need he give an answer which will have a direct tendency to degrade his character, unless it is to the very fact in issue or to a fact from which the fact in issue would be presumed. But a witness must answer as to the fact of his previous conviction for a felony."

The extent of examination and limitations of the application of the last sentence of the statute just quoted is considered as relating to the testimony of the "accused" on direct and cross-examination in the case of *State* v. *Crawford*, 60 Utah 6, 206 P. 717 (a robbery case). That part of the section contained in the opening statement thereof, viz., "A witness must answer questions *legal and pertinent* to the matter in issue, though his answer may establish a claim against himself," evidently relates to requirement to answer in civil cases. The second clause of the first sentence of the section provides that a witness "need not give an answer which will have a tendency to subject him to punishment for felony." This clause is general and gives protection to a witness against giving an answer in any event which will have a tendency to subject him to punishment for crime. We think this is the sense in which the word "felony" is used in this section, notwithstanding the fact the statutes divide crimes into two classes,—felonies and misdemeanors

(R. S. U. 1933, 103-1-12) ; and that "A *felony is a crime* which is or may be punishable with death, or by imprisonment in the state prison" (R. S. U. 1933, 103-1-13). Under the same section, "every *other crime* is a misdemeanor." (Italics added.)

The constitutional language is:

"The accused shall not be compelled to give evidence against himself."

Such language permits of no classification of crimes or otherwise that will require the "accused" to give evidence against himself, but opens the way to the common law privilege against self-crimination.

Do the constitutional and statutory provisions give the same protection to "witnesses" as to "accused" persons? The Supreme Court of Missouri, in discussing this general, and, in so far as states of the United States are concerned, uniform provision, and indicating the wholesomeness of the provision, says:

"The constitutional provision before us is, no doubt, quite inconvenient, in some instances, as a barrier to investigation of criminal conduct, but its larger value in expressing and enforcing a principle of individual right is thought to more than counterbalance such inconvenience."

And after referring to the position taken by the Supreme Court of the United States on the application of the Federal Constitutional clause, U. S. C. A. Const. Amend. 5, declaring that no person "shall be compelled in any Criminal Case to be a witness against himself," wherein one subpoenaed to testify before a grand jury was protected from making disclosures which might subject him to subsequent prosecution, the Missouri court, quoting further, said:

"The manifest purpose of the constitutional provisions, both of the states and of the United States, is to prohibit the compelling of testimony of a self-criminating kind from *a party or a witness.*" (Italics added.) *State ex rel. Attorney General* v. *Simmons Hdw. Co.*, 109 Mo. 118, 18 S. W. 1125, 1126, 15 L. R. A. 676.

This brings us to the remaining provision of the statute to the effect that a witness "need not give an answer * * * which will have a direct tendency to degrade his character, unless it is to the very fact in issue or to a fact from which the fact in issue would be presumed." The information sought to be elicited by the question was not the fact in issue. The witness had testified negatively as to the fact in issue sought to be established. Was the fact sought to be elicited, to wit, an act of sexual intercourse prior to the time alleged in the information and as to which the state had elected to be bound, such fact that from it the very fact in issue would be presumed? We think this question must be answered in the negative. The testimony of the witness was not in conflict with any other testimony up to that time offered. The admission sought to be obtained from the witness would have been admissible had the state presented evidence establishing the fact in issue or independent evidence tending to establish such fact.

In the case of *State* v. *Reese,* 43 Utah 447, 135 P. 270, a bastardy case, this court said [page 278] :

"It may be proper *upon cross-examination* of the accused, if he denies having had sexual intercourse with the prosecutrix, to show his conduct and inclination toward the prosecutrix for a reasonable time prior to the alleged intercourse, but this is only proper as showing the probability of the alleged intercourse" (italics added),

after the prosecutrix had testified affirmatively as to the fact in issue. That certain evidence may tend to show probability may be sufficient reason to make it admissible in the sound discretion of the court. But to say that an act of sexual intercourse at a previous time shows such probability that the very fact in issue or a fact from which the fact in issue would be presumed confounds a rule of admissibility of evidence with a statutory provision exempting a witness from degradation of character, humiliation, or embarrassment, aside from the fact the answer if true might

also have a tendency to subject him to punishment for a crime.

Law not based upon sound morality cannot in an enlightened and progressive state endure. Usually the higher the moral standards and ideals, and the broader virtue's foundations, the fewer are the occasions for penal regulations. Sexual purity has since time out of mind been the concern of all interested in moral codes and legal inhibitions aimed to aid in the maintenance of that purity. Promiscuous sexual relations undermine the standards of life and are not only always immoral under an advanced civilization, but are also illegal—although there may be instances when one of the parties concerned in the breach may for other reasons go unpunished legally. As aptly put in the *State* v. *Reese* Case, supra:

"An unlawful sexual act, other than rape, is by our statute made a crime and can be punished as such."

More might be cited and said upon the foregoing propositions. We now pass to a difficult question. Must a competent witness, even though a minor, testify to facts or occurrences which would have a direct tendency to degrade her character when the question does not go to the very fact in issue or to a fact from which the fact in issue would be presumed; or, must a witness, though a minor, give an answer which may have a tendency to subject such witness to punishment for crime?

It has been heretofore indicated that in the instant case, had the answer been what it may be presumed the prosecutor desired or expected it to be, still such answer would not have furnished proof of the very fact in issue or such a fact as would have permitted either court or jury to find or presume from it the very fact in issue.

The witness was a seventeen year old female. When she passes her eighteenth birthday, assuming that occurs before the statute of limitations has run, may she then be prosecuted for fornication or lewdness or other sexual of-

fense? The acts of a fornicator or a lewd or lascivious person are the same whether a statutory penalty is affixed or not, and the same degradation attaches whether prosecuted or not. It may be noted that until 1935 unlawful cohabitation, as defined by the Utah Statutes, related only to males. Unlawful cohabitation was an act of mutuality of the parties participating. By an amendment, Laws of Utah, 1935, Chap. 112, unlawful cohabitation applies to "any person" who cohabits "with more than one person of the opposite sex." This amended statute is not strictly pertinent, but is interesting and instructive.

In carnal knowledge cases and some other illicit sexual offenses the co-respondent is not an accomplice. The question of accomplices and a number of cases relating thereto have been cited and argued. The question of *accomplice* is not involved in this case and the question of privilege or want of it is not based on that ground.

It is argued that because a female under the age of eighteen years and over the age of thirteen years is not guilty of certain sexual offenses and is subject to juvenile court jurisdiction, that such female is incapable of consenting to a sexual act. There are numerous authorities that contain language susceptible of the application contended for, if not directly so stating the proposition. Such language forces a distinction between legal consent and intellectual consent.

"All persons are capable of committing crimes, except those belonging to the following classes: (1) Children under the age of seven years. (2) Children between the ages of seven years, and fourteen years, in the absence of clear proof that at the time of committing the act charged against them they knew its wrongfulness. * * *" R. S. U. 1933, 103-1-40.

Seven other classes of persons are named; none of which refer to persons between the ages of fourteen and eighteen years, unless such persons fall within the classes named— such as idiots, lunatics, etc.

"The following persons are liable to punishment under the laws of this state: (1) All who commit, in whole or in part, any crime within this state * * *" R. S. U. 1933, 103-1-41.

The following headnote reflects the holding of a case:

"The statute fixing the age of consent does not render a girl under that age incapable of committing a sexual crime, so as to deprive her, of the constitutional privilege of refusing to answer questions relating to such crime which will tend to incriminate her." *Ex parte Grace Nesson*, 25 S. D. 49, 125 N. W. 124, 27 L. R. A., N. S., 872.

There are illustrations and comments in the opinion pertinent to the summary above quoted.

The better interpretation of this matter of consent of females under eighteen years of age is stated in the case of *State* v. *Learned*, 73 Kan. 328, 85 P. 293:

"The inquiry then arises, can a girl under the age of 18 years consent to the act of sexual intercourse, with one within the degrees of relationship within which marriage is incestuous and void, and thus become guilty of incest? If not, why not? There is no statutory provision and no common-law rule to the contrary. Section 2016, General Statutes of 1901, commonly called the age of consent law, simply provides, 'every person who shall be convicted of rape, either by carnally and unlawfully knowing any female under the age of 18 years or,' etc. This does not disqualify the female under 18 years from consenting, but provides, in effect, that her consent is no defense; that notwithstanding her consent the act, on the part of the man constitutes the crime of rape. *State* v. *Woods*, 49 Kan. 237, 30 P. 520; *State* v. *White*, 44 Kan. [514,] 520, 25 P. 33. We answer the above question in the affirmative. A female under the age of 18 years may be guilty of the crime of incest."

In the case of *Ex parte Tahbel*, 46 Cal. App. 755, 189 P. 804, one Bodo Tahbel, a boy 15 years of age, was committed to a detention home under a juvenile court law for refusing to answer certain questions when a witness in the juvenile court. His refusals to answer were upon the ground that by his answers he might incriminate himself. Habeas corpus was brought. The California court issued and made permanent the writ, saying in part, at page 806 of 189 P.:

"According to one of the oldest maxims of the common law, 'Nemo tenetur seipsum accusare,' any person, whether a party or stranger to the litigation, either in a civil action or a criminal prosecution, may,

if he sees fit, refuse to answer any question the answer to which, if true, will render him punishable for crime, or which, in any degree, may tend to establish a public offense with which he might be charged."

In this connection see also *State* v. *Terrell*, 55 Utah 314, 186 P. 108, 25 A. L. R. 497, at page 326 of the Utah report, 186 P. at page 112.

Just what distinctions may be drawn in considering what constitutes a crime, a public offense, a delinquency or matters that will have a direct tendency to degrade the character of a witness called upon to answer concerning acts to which a person may have been a party, is a difficult matter to decide and has resulted in what seems to be a conflict of authority. No good purpose would be served by collecting the cases and attempting to harmonize or distinguish them or classify them upon the basis of principles applied.

The word "delinquent" is now commonly used with reference to derelictions and acts other than felonies of children, although the same derelictions and acts when applied to those over a specified age are commonly denominated crimes. A typical example is that of larceny. The same act performed by a male 18 years of age, in stealing property, is a crime, while if performed before that age is denominated a delinquency. In either instance the degradation incident to the act is the same. If the concept of criminality arises only because of an arbitrary age limit fixed by statute, then it is all the more important that the juvenile should be entitled to and be protected in the right to the privilege of silence where his statements, if made, might be self-criminating. Again, if the juvenile court proceedings are "in the interest" of the delinquent surely a sexual abberation should not be made a matter of public record to the humiliation or degradation of a juvenile.

The conception of juvenile delinquency should be looked upon charitably, equitably, and even tenderly, though firmly. We simply indicate that juvenile delinquency is predicated upon positive or aggressive acts of the juvenile, neces-

sary to give the juvenile court jurisdiction, the same acts that would vest any other court with criminal jurisdiction whether juvenile or adult. We have in mind such offenses as petit larceny, assault and battery, etc. We are thus confronted with the problem of what constitutes punishment and what may be "in the interest" of the delinquent in juvenile court procedure. Put otherwise, is the commitment of a juvenile to a detention home, public or private, or to the industrial school or other "place of safety" or an officer's taking "a child into custody," and thereby depriving him of the society of his friends and associates, the attention and care of his parents, any less a punishment than the commitment of an adult to a county jail or the state prison, provided both are in the interest of and for the benefit of the person so committed?

It is provided by the Utah statutes relating to juvenile court jurisdiction that such courts shall have "exclusive original jurisdiction in all cases relating to the * * * delinquency of children who are under eighteen years of age, except in felony cases * * *." R. S. U. 1933, 14-7-4, also:

"No adjudication upon the status of any child by the juvenile court shall operate to impose any of the civil disabilities ordinarily imposed by a conviction in a criminal case, nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction. Neither the record of the disposition of a child nor any evidence given in the juvenile court shall be admissible as evidence against the child in any case or proceedings in any other court." R. S. U. 1933, 14-7-32.

Degradation is the bringing of one into shame or humiliation of one's self or into the contempt, disrespect, disfavor, dishonor, or diminished esteem of one's relatives, friends, associates or the community of his residence.

The prisoner should be discharged. Such is the order.

LARSON, J., concurs.

WOLFE, Justice (concurring in part, dissenting in part).

On the trial of a defendant charged with carnally and unlawfully knowing a female over the age of thirteen years and under the age of eighteen years the girl on whose person the crime was alleged to have been committed on July 27, 1938, was called as a witness. After she had denied that the crime alleged had been committed the witness was asked:

"Did the defendant James A. Kaddas have sexual intercourse with you at any time between July 4th, 1938 and July 27th, 1938?"

The objection of immateriality, incompetency and irrelevancy was overruled and the witness claimed her privilege against answering questions calling for incriminating or degrading answers. The court ruled the claim of privilege not available and found the witness in contempt for her refusal to answer. This proceeding was brought to test the lawfulness of the finding of contempt and the opinion written by Mr. Justice MOFFAT holds that the privilege is available to this witness, apparently on the grounds of both incrimination and degradation, under R. S. Utah 1933, 104-49-20.

I think in this case the objection on the ground of immateriality and irrelevancy should have been sustained but not on the ground set out in the court's opinion. In this case the only evidence was as to the position and state of dishabille of the witness and the defendant in the automobile. That spoke of only two possibilities—either that the act had not yet been started or that it had ended. The jury could not be permitted to speculate on which. Neither could any testimony as to prior acts enlighten the jury as to whether the couple were just making ready or had finished. The rule laid down in *State* v. *Hilberg*, 22 Utah 27, 61 P. 215, is in a case where a couple are together under such circumstances that it might or could have happened and the previous acts tend to *explain* what did happen. But when a couple are caught as in this case, where the issue is reduced only to

the question of whether the act had not yet started or had been finished, and there is no doubt about the reason the two were together and what had either happened or was intended to happen, it appears to me that evidence of prior acts does not tend to explain anything about the case. It is as if the only evidence was positive that the two were actually found in commission of the act. How in such case would evidence of prior acts tend to render more probable the act charged or explain any acts which might have otherwise been neutral. Evidence of prior acts of intercourse have the same province as res gestae. They must tend to explain, or elucidate or color some other act which would otherwise be of a neutral shade. When the evidence of the situation of the parties charged with intercourse is such that no such prior acts can explain or elucidate or give any new significance to such situation, they are inadmissible because irrelevant.

It is for this reason I conclude that the objection on the ground of irrelevancy should have been sustained rather than for the reason given in the main opinion. I do not think it is incumbent on the court to explore ahead in the case in order to see what the final outcome may be before it rules on the objection of immateriality. The opinion says:

"As the evidence * * * then stood that objection should have been sustained."

Rules of evidence do not ordinarily depend on whether in the end the party offering it can make a case and the court does not need to explore into the matter of whether finally a case for the jury will be made out before he rules on a point of evidence. If in this case the girl's answers would have been relevant, the mere fact that even though admitted, a case for the jury could not have been made out by the state would not render them inadmissible on the ground of irrelevancy. In his administration and management of a trial the judge has a certain discretion to inquire if the party has any more evidence and if not spare a witness

embarrassment and shame where her answers would avail nothing but that is a part of the discretion incident to good trial administration.

But a witness cannot defend a refusal to answer on the ground that the court has wrongly ruled his testimony admissible.

Consequently, we are required to determine if the witness could claim privilege under Sec. 104-49-20, R. S. U. 1933. The statute reads:

"A witness must answer questions legal and pertinent to the matter in issue, though his answer may establish a claim against himself; but he need not give an answer which will have a tendency to subject him to punishment for felony; nor need he give an answer which will have a direct tendency to degrade his character, unless it is to the very fact in issue or to a fact from which the fact in issue would be presumed. But a witness must answer as to the fact of his previous conviction for felony."

This statute must be analyzed as follows: There is first a compulsion to answer every question legal and pertinent to the matter at issue. That includes questions which may merely affect or touch the credibility of the witness or of other witnesses rather than those which affirmatively tend to establish a fact or to disprove a fact. *State* v. *Hougensen,* 91 Utah 351, 64 P. 2d 229. But from this general compulsion is withdrawn the requirement of answering questions where the answer will subject him to punishment for a felony. Such exception will be later considered. Also withdrawn from the realm of general compulsion are those questions which call for an answer which will have a *direct* tendency to degrade his character. But such exception to the requirement to answer does not exist if the question calls for an answer which "is to the very fact in issue or to a fact from which the fact in issue would be presumed." Certain it is that there is a growing tendency to construe this last quoted clause to mean any fact pertinent to prove or disprove a case except such as affect only credibility. In *State* v. *Hougensen,* supra, it was said [page 238]:

"(2) Any witness may be asked a question the answer to which has a direct tendency to degrade his or her character if it is *pertinent to establish* the ultimate fact in issue or to a fact from which such fact may be presumed or inferred." (Italics added.)

In *Conway* v. *Clinton*, 1875, 1 Utah 215, 220, it was stated:

"* * * but it is well-settled that a witness is not bound to answer, nor a court to compel answer to an inquiry to disgrace a witness unless the evidence is *material* to the issue being tried." (Italics added.)

See *Lukert* v. *Eldridge*, 49 Mont. 46, 139 P. 999; *Walters* v. *Seattle R. & S. R. Co.*, 48 Wash. 233, 93 P. 419, 24 L. R. A., N. S., 788; 28 R. C. L. 423; Wigmore on Evidence, 2d Ed., 384. But it is not necessary in this case to determine whether the quoted clause should have a broad or narrow construction. If the evidence was irrelevant to any fact in issue, as we have heretofore shown, it cannot "go to the very fact in issue or to a fact from which the fact in issue may be presumed." In consequence of what has just been said I agree with the conclusion reached in the main opinion that the witness was not required to answer the question because she could claim privilege, but I think it unnecessary to hold generally that prior acts of intercourse do not "go to the very fact in issue or to a fact from which such fact may be presumed." In this case, owing to the evidence of the situation in which the couple were found, they do not. Whether in a different sort of a case where such prior acts are admissible, a witness may claim privilege on the point that it would degrade his or her character, will depend on whether we give the above quoted clause a broad or a narrow construction. The facts of this case relieve us at this time of determining that.

For the reasons above set out I agree with the results of the decision. I should think that the matter might have rested with a decision on this part of the case without entering into the field of incrimination. But since it does hold that the answers called for would have incriminated the girl and

I dissent from such holding, I shall give my views. The part of Sec. 104-49-20, dealing with the matter, reads:

"A witness * * * need not give an answer which will have a tendency to subject him to punishment for felony * * *"

I agree that the statute must be construed to protect the witness against answering if the answers would tend to subject him to punishment for a misdemeanor if the offense is one malum in se. I reserve my opinion in the case of a misdemeanor which is malum prohibitum or of slight culpability. It may be that the Constitution may protect a witness in any case, but I am not now ready to hold that a witness may refrain, for instance, from giving testimony in some important case because it would reveal that he had over parked and thus tend to subject him to a small fine. *City of Mobile* v. *McCown Oil Co.*, 226 Ala. 688, 148 So. 402.

But I seriously disagree that a witness may refuse to answer questions because their answers may mean that the Juvenile Court will be put in information from which it may find delinquency. The opinion in this respect appears to lose sight of the whole basis of juvenile court purposes. The purpose was not to punish but to reform or save juveniles to good citizenry. In *Mill* v. *Brown*, 31 Utah 473, 88 P. 609, 120 Am. St. Rep. 935, it was stated [page 615]:

"Those who come, and are intended to be brought, before juvenile courts must be reached through love, not fear. The purpose in bringing them before the court is to lead them away from, and to destroy their propensities to, vice; to elevate, not degrade; to reform, not to punish them."

I can hardly conceive that a child should be able to say, "I will not tell what may enable the juvenile court to take hold of me and salvage me."

If in this case the witness could have been punished for a crime, I would, of course, agree that she would not have to answer. But the opinion seems to confuse the two ideas. It seems to hold that she can be punished for a crime, but

out of an abundance of caution further concludes evidently that if she cannot she is protected because she may by her answers lay herself open to juvenile court jurisdiction. Section 14-7-4 provides that juvenile courts shall have "exclusive original jurisdiction in all cases relating to the * * * delinquency of children who are under eighteen years of age, except in felony cases * * *."

If this witness' testimony would have related to anything that could be a crime it would be fornication, which is a misdemeanor. R. S. U. 1933, 103-1-13, 103-51-5. Jurisdiction of this offense would be in the juvenile court. Section 14-7-25 provides as to the juvenile court:

"In all cases relating to the delinquency * * * of children and their disposition the court shall be regarded as exercising equity jurisdiction."

And as pointed out in the opinion, Sec. 14-7-32 provides as follows:

"No adjudication upon the status of any child by the juvenile court shall operate to impose any of the civil disabilities ordinarily imposed by a conviction in a criminal case, nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction. Neither the record of the disposition of a child nor any evidence given in the juvenile court shall be admissible as evidence against the child in any case or proceedings in any other court."

So the question becomes this: Where a statute confers a privilege against testimony subjecting the witness to punishment for a crime, and the witness is a minor and the offense such that jurisdiction of the offense would be in the juvenile court only, which is not a criminal court and whose judgments or dispositions do not constitute convictions of crime, does the privilege apply? The opinion refers to four cases as relating to this question. *State* v. *Terrell*, 55 Utah 314, 326, 186 P. 108, 25 A. L. R. 497, holds that a child between the ages of seven and fourteen is capable of committing a felony, although recognizing that jurisdiction of the

offense is in the juvenile court except when "punishable by death or life imprisonment." This helps not at all in determining whether an offense cognizable only in juvenile courts contemplates such "punishment" as makes the privilege of a witness against self-incrimination operative.

*Ex parte Nesson,* 25 S. D. 49, 125 N. W. 124, 27 L. R. A., N. S., 872, seems to be against the proposition as applied to this case. There the accused was charged with incest, committed upon his 15 year old daughter. The daughter claimed her privilege against answering the question whether such had taken place, and was found in contempt, the court contending that "inasmuch as the applicant was under the age of 18 years at the date inquired about, she could not be capable of committing the crime of incest, and therefore any answer she might make could not possibly tend to incriminate her." [page 125.] On appeal this contention was refused, and the court found that a 15 year old girl could commit the crime of incest and therefore "it was her constitutional right to refuse to answer the questions asked * * *." But no question was raised as to the possible effect on that ruling if the offense would be cognizable only in the juvenile court. The court said:

"* * * it is easy for the Legislature to prevent all danger along this line. Let it but pass an act authorizing the proper officer or officers to grant absolute immunity from punishment for any crime which the witness' evidence may tend to show her guilty of, and when such order of immunity is made, her constitutional privilege ceases."

Has not our juvenile court statute granted sufficient immunity as to fornication that the privilege is not available?

The third case is *State* v. *Learned,* 73 Kan. 328, 85 P. 293. The portion which the opinion quotes merely says that a girl under the age of 18 years may be guilty of the crime of incest. That much may be admitted as true in this state also, and since the crime would be a felony it would be cognizable in either the juvenile court *or the district court.* The case, therefore, does not help in determining this problem.

The other case referred to is *Ex parte Tahbel,* 46 Cal. App. 755, 189 P. 804. That case is likewise of but little help since there the crime for which the 15 year old boy was placed in an institution for boys by the juvenile court was a felony and against the argument that "the minor is not being prosecuted for any crime, and is in no danger of conviction of a public offense," [page 806] the court replied by showing that he was also amenable to the courts since the statute provided as to juvenile courts that

"if it shall determine that such minor is not a fit and proper subject to be dealt with under the provisions of the act [the juvenile court] 'may dismiss the petition therein, and direct that said person be prosecuted under the general law.' "

The juvenile court is not a criminal court. *Mill* v. *Brown,* supra; *People* v. *Lewis,* 260 N. Y. 171, 183 N. E. 353; 86 A. L. R. 1001. But are its processes nevertheless such as constitute "punishment" so as to raise a privilege in a witness against giving testimony criminatory as to an offense cognizable in the juvenile court? *People* v. *Lewis,* supra, does not discuss precisely the same question as is here raised, but the case holds of necessity that the action of the juvenile court is not punishment and that testimony making a witness amenable only to the juvenile court is not self-incriminating. The statutes there quoted show that the conception of the juvenile court is similar to the one expressed in *Mill* v. *Brown,* supra, characterizing our own system of handling juvenile delinquency. A boy was suspected of having stolen $12 and was brought into juvenile court where, in response to questions, he confessed fully and frankly and was committed to a state school for boys. The court remarked that [page 354]:

"If the hearing here had been a criminal trial, its sole defect would have been the failure to warn against self-incrimination. But it was not a criminal trial and there was no defect."

The court considered the matter fully and concluded that there was no error in the commitment. The opinion seems

to rest partly on the basis that the proceedings before the juvenile court "was not a criminal trial" and therefore the witness could not claim the privilege vouchsafed by the New York State Constitution, Article 1, Section 6, which provides that:

"No person shall * * * be compelled in any criminal case to be a witness against himself."

But such a constitutional provision is uniformly interpreted to give protection to a person in any court proceedings, criminal or otherwise. *People* v. *Cummins*, 153 App. Div. 93, 138 N. Y. S. 517, affirmed 209 N. Y. 283, 103 N. E. 169; *Fross* v. *Wotton*, 3 Cal. 2d 384, 44 P. 2d 350; Wigmore, op. cit., Sec. 2252. Therefore the result would have been the same in *People* v. *Lewis*, supra, if the proceedings had been criminal, and the true reason for allowing the privilege must have been that self-exposure to juvenile court action was not self-incrimination.

It should be noted that this decision was five judges to two. The dissent is quoted at length by the applicants here, at pages 36-40 of their brief and they rely almost exclusively on that dissent to establish their position. Nevertheless, I think the majority view was in harmony with and recognized the underlying principles and purposes applicable to juvenile courts. Our opinion seems to ignore them. I therefore dissent from the conclusion that the witness in this case could be found guilty of a crime and furthermore that the fact that her answers might subject her to the supervisory jurisdiction of the juvenile court permitted her to claim the privilege. For reasons earlier above set out, I concur in the result.

FOLLAND, Chief Justice.

I concur for the reasons stated by Mr. Justice WOLFE in his opinion.