Ex parte SADLEIR.

SADLEIR v. YOUNG, Sheriff.

No. 6083.   Decided September 27, 1939.   (94 P. 2d 161.)

For former opinion, see 97 Utah 291, 85 P. 2d 810.

*Harley W. Gustin* and *Ralph B. Ottenheimer,* both of Salt Lake City, for plaintiff.

*Brigham E. Roberts,* of Salt Lake City, for defendant.

MOFFAT, Chief Justice.

This cause was argued and submitted to this court on November 14, 1938, and an opinion rendered on December 31, 1938, reported in 97 Utah 291, 85 P. 2d 810.

Subsequently a rehearing was granted and the cause was again argued and submitted to the court.

There may be some question in the mind of a reader as to whether section 104-49-20, Revised Statutes of Utah 1933, found in the code of civil procedure, applies also to criminal procedure. That section relates to privileges of witnesses and its application is fully discussed in the former opinion.

The code of criminal procedure makes no reference to the privileges of witnesses; however, sections 105-45-1 and 105-45-2, Revised Statutes of Utah 1933, constituting a part of the criminal code of procedure, provide:

"105-45-1. The rules for determining the competency of witnesses in civil actions shall be applicable also to criminal actions and proceedings, except as otherwise provided in this code."

"105-45-2. The rules of evidence in civil actions shall be applicable also to criminal actions, except as otherwise provided in this code."

Therefore, it is consistent to hold that section 104-49-20, supra, relating to the privileges of witnesses, as found in the code of civil procedure, should apply equally to privileges of witnesses in criminal procedure.

With this addition, our former opinion is affirmed and made the opinion of the court. The prisoner is discharged.

LARSON and PRATT, JJ., concur.

McDONOUGH, Justice (concurring).

I concur in the result on the ground that the witness was entitled to assert the privilege against giving an answer which would have a direct tendency to degrade her character. I withhold my concurrence as to that part of the opinion which holds that the witness might properly refuse to answer on the ground that the answer would tend to subject her to punishment for a crime and concur with the views expressed by Mr. Justice WOLFE in his dissenting opinion as to such claim. I also agree with the views therein expressed as to the question asked being not subject to the objection of irrelevancy or immateriality.

I do not think the statute in question, as to the portion thereof having reference to answers directly tending to degrade the witness's character, fairly susceptible of an interpretation which limits the privilege to refusing to answer such questions as are directed to matters not directly material to the issue. The statute reads that the answer to such question must be given only where it is "to the very fact in issue" or to "a *fact* from which the *fact in issue* would be presumed." (Italics added.) If by the last quoted portion of the statute the legislature meant "a fact from which, taken in connection with all the other facts and cir-

cumstances in the case, the fact in issue may be inferred," it might well have said so.

WOLFE, Justice (dissenting).

I dissent. I concurred in the result of the original opinion and only partly in the reasoning and basis for that result. I have concluded that on one question my opinion was in error and my former concurrence, therefore, now becomes a full dissent. The part of my former opinion which was a dissent from the opinion written by Mr. Chief Justice MOF-FAT I still very stoutly adhere to; but that portion was in error which held that the objection to the question of whether Kaddas had had previous acts of sexual intercourse with the witness was improperly overruled; hence my holding that such objection should have been sustained and the reasons for my belief differing from those given by Mr. Chief Justice MOFFAT I withdraw. In order to avoid confusion I shall now state the reasons fully why I dissent from the opinion of Mr. Chief Justice MOFFAT even though there will be considerable repetition in my two opinions.

On the trial of a defendant charged with carnally and unlawfully knowing a female over the age of thirteen years and under the age of eighteen years, the girl on whose person the crime was alleged to have been committed on July 27, 1938, was called as a witness. After she had denied that the crime alleged had been committed the witness was asked:

"Did the defendant James A. Kaddas have sexual intercourse with you at any time between July 4, 1938, and July 27, 1938?"

The objection of immateriality, incompetency and irrelevancy was overruled and the witness claimed her privilege against answering questions calling for incriminating or degrading answers. The court ruled the claim of privilege not available and found the witness in contempt for her refusal to answer. This proceeding was brought to test the lawfulness of the finding of contempt and the opinion writ-

ten by Mr. Chief Justice MOFFAT holds that the privilege is available to this witness, apparently on the grounds of both incrimination and degradation, under R. S. Utah 1933, 104-49-20.

I think the objection on the ground of immateriality and irrelevancy was properly overruled.

I do not think it is incumbent on the court to explore ahead in the case in order to see what the final outcome may be before it rules on the objection of immateriality. The opinion says [85 P. 2d 811]:

"As the evidence * * * then stood that objection should have been sustained."

Rules of evidence do not ordinarily depend on whether in the end the party offering it can make a case and the court does not need to explore into the matter of whether finally a case for the jury will be made out before he rules on a point of evidence. If in this case the girl's answers were relevant, the mere fact that a case for the jury could not have been made out by the state would not render them inadmissible on the ground of irrelevancy. In his administration and management of a trial the judge has a certain discretion to inquire if the party has any more evidence and if not spare a witness embarrassment and shame where her answers would avail nothing but that is a part of the discretion incident to good trial administration.

But a witness cannot defend a refusal to answer on the ground that the court has wronguly ruled his testimony admissible. Consequently, we are required to determine if the witness could claim privilege under Sec. 104-49-20, R. S. U. 1933. The statute reads:

"A witness must answer questions legal and pertinent to the matter in issue, though his answer may establish a claim against himself; but he need not give an answer which will have a tendency to subject him to punishment for felony; nor need he give an answer which will have a direct tendency to degrade his character, unless it is to the very fact in issue or to a fact from which the fact in issue would be

presumed. But a witness must answer as to the fact of his previous conviction for felony."

This statute must be analyzed as follows: There is first a compulsion to answer every question legal and pertinent to the matter at issue. That includes questions which may merely affect or touch the credibility of the witness or of other witnesses rather than those which affirmatively tend to establish a fact or to disprove a fact. *State* v. *Hougensen,* 91 Utah 351, 64 P. 2d 229, 233. But from this general compulsion is withdrawn the requirement of answering questions where the answer will subject him to punishment for a felony. Such exception will be later considered. Also withdrawn from the realm of general compulsion are those questions which call for an answer which will have a direct tendency to degrade his character. But such exception to the requirement to answer does not exist if the question calls for an answer which "is to the very fact in issue or to a fact from which the fact in issue would be presumed." Certain it is that there is a growing tendency to construe this last quoted clause to mean any fact pertinent to prove or disprove a case except such as affect only credibility. In *State* v. *Hougensen,* supra, it was said (page 238 of 64 P. 2d):

"(2) Any witness may be asked a question the answer to which has a direct tendency to degrade his or her character if it is *pertinent to establish* the ultimate fact in issue or to a fact from which such fact may be presumed or inferred." (Italics added.)

In *Conway* v. *Clinton,* 1875, 1 Utah 215, 220, it was stated:

" * * * but it is well-settled that a witness is not bound to answer, nor a court to compel answer to an inquiry to disgrace a witness unless the evidence is *material* to the issue being tried." (Italics added.)

See *Lukert* v. *Eldridge,* 49 Mont. 46, 139 P. 999; *Walters* v. *Seattle R. & S. R. Co.,* 48 Wash. 233, 93 P. 419, 24 L. R. A., N. S., 788; 28 R. C. L. 423; Wigmore on Evidence, 2nd Ed., 384.

I think that any question which calls for an answer which is pertinent to establish the ultimate fact in issue or a fact from which such fact may be presumed or inferred is not withdrawn from the general compulsion imposed by 104-49-20, R. S. U. 1933, even though it has a direct tendency to degrade the witness. The real problem then is whether the question called for an answer which was pertinent to establish the ultimate fact in issue. The question called for such answer. The witness denied the testimony of the state's witness that he found Kaddas and her in a highly compromising position but stated that he and she were sitting in the back of the car talking, with neither in a state of partial dishabille or in any attitude which could be deemed improper. This made an issue as to what was intended or what had taken place. A charge of carnally and unlawfully knowing a female over the age of thirteen years and under the age of eighteen years includes the charge of attempting to have such intercourse. Because the evidence of the state's witness left the jury in the dark as to whether the act which was about to be committed, or which was to be or had been committed, was intercourse or some other act for sex satisfaction, the matter of whether there had been previous acts of intercourse was highly pertinent to resolve this matter of intent. Even if an act of intercourse had not yet taken place, the fact that this couple had indulged in such acts previously was certainly pertinent to prove intent to accomplish it at this time. The rule laid down in *State* v. *Hilberg*, 22 Utah 27, 61 P. 215 is applicable here. Where a couple are together under such circumstances that intercourse might or could have happened, previous acts explain what did happen or, if the drama is interrupted at such stage that it is impossible to tell whether it was just to start or had finished, they are admissible to prove intent; and where the drama has proceeded so far only as to justify a verdict of attempt to carnally or unlawfully know a female, the intent is still very material. *State* v. *Mortenson*, 95 Utah 541, 83 P. 2d 261, tells us that in this case if the jury chose to believe the

state's witness, the episode had passed from the stage of preparation into the stage of attempt, provided the intent to have intercourse were present. So I think in view of the conflict of testimony and for the purposes at least of proving the intent which Kaddas had in mind, if the jury chose to believe the state's witness, when he was poised over the couchant witness, the testimony of previous acts of intercourse was admissible.

I must also disagree with the holding of Mr. Chief Justice MOFFAT'S opinion that the answers called for would have incriminated the witness.

The part of Sec. 104-49-20, dealing with the matter reads:

"A witness * * * need not give an answer which will have a tendency to subject him to punishment for felony * * *."

I agree that the statute must be construed to protect the witness against answering if the answers would tend to subject him to punishment for a misdemeanor if the offense is one malum in se. I reserve my opinion in the case of a misdemeanor which is malum prohibitum or of slight culpability. It may be that the Constitution may protect a witness in any case, but I am not now ready to hold that a witness may refrain, for instance, from giving testimony in some important case because it would reveal that he had overparked and thus tend to subject him to a small fine. *City of Mobile* v. *McCown Oil Co.*, 226 Ala. 688, 148 So. 402.

But I seriously disagree that a witness may refuse to answer questions because their answers may mean that the Juvenile Court will be put on information from which it may find delinquency. The opinion in this respect appears to lose sight of the whole basis of juvenile court purposes. The purpose was not to punish but to reform or save juveniles to good citizenry. In *Mill* v. *Brown*, 31 Utah 473, 88 P. 609, 120 Am. St. Rep. 935, it was stated (page 615, of 88 P.) :

"Those who come, and are intended to be brought, before juvenile courts must be reached through love, not fear. The purpose in bringing them before the court is to lead them away from, and to destroy

their propensities to, vice; to elevate, not degrade; to reform, not to punish them."

I can hardly conceive that a child should be able to say, "I will not tell what may enable the juvenile court to take hold of me and salvage me."

If in this case the witness could have been punished for a crime, I would, of course, agree that she would not have to answer. But the opinion seems to confuse the two ideas. It seems to hold that she can be punished for a crime, but out of an abundance of caution further concludes evidently that if she cannot she is protected because she may by her answers lay herself open to juvenile court jurisdiction. Section 14-7-4 provides that juvenile courts shall have "exclusive original jurisdiction in all cases relating to the * * * delinquency of children who are under eighteen years of age, except in felony cases * * *."

If this witness's testimony would have related to anything that could be a crime it would have been fornication, which is a misdemeanor. R. S. U. 1933, 103-1-13, 103-51-5. Jurisdiction of this offense would be in the juvenile court. Section 14-7-25 provides as to the juvenile court:

"In all cases relating to the delinquency * * * of children and their disposition the court shall be regarded as exercising equity jurisdiction."

And as pointed out in the opinion, Sec. 14-7-32 provides as follows:

"No adjudication upon the status of any child by the juvenile court shall operate to impose any of the civil disabilities ordinarily imposed by a conviction in a criminal case, nor shall any child be deemed a criminal by reason of such adjudication, or shall such adjudication be deemed a conviction. Neither the record of the disposition of a child nor any evidence given in the juvenile court shall be admissible as evidence against the child in any case or proceedings in any other court."

So the question becomes this: Where a statute confers a privilege against testimony subjecting the witness to pun-

ishment for a crime, and the witness is a minor and the offense such that jurisdiction of the offense would be in the juvenile court only, which is not a criminal court and whose judgments or dispositions do not constitute convictions of crime, does the privilege apply? The opinion refers to four cases as relating to this question. *State* v. *Terrell*, 55 Utah 314, 326, 186 P. 108, 25 A. L. R. 497, holds that a child between the ages of seven and fourteen is capable of committing a felony, although recognizing that jurisdiction of the offense is in the juvenile court except when "punishable by death or life imprisonment." This helps not at all in determining whether an offense cognizable only in juvenile courts contemplates such "punishment" as makes the privilege of a witness against self-incrimination operative.

*Ex parte Nesson*, 25 S. D. 49, 125 N. W. 124, 27 L. R. A., N. S., 872, seems to be against the proposition as applied to this case. There the accused was charged with incest, committed upon his 15 year old daughter. The daughter claimed her privilege against answering the question whether such had taken place, and was found in contempt, the court contending that "inasmuch as the applicant was under the age of 18 years at the date inquired about, she could not be capable of committing the crime of incest, and therefore any answer she might make could not possibly tend to incriminate her." (page 125 of 125 N. W.) On appeal this contention was refused, and the court found that a 15 year old girl could commit the crime of incest and therefore "it was her constitutional right to refuse to answer the questions asked * * * ." But no question was raised as to the possible effect on that ruling if the offense would be cognizable only in the juvenile court. The court said:

"* * * it is easy for the Legislature to prevent all danger along this line. Let it but pass an act authorizing the proper officer or officers to grant absolute immunity from punishment for any crime which the witness' evidence may tend to show her guilty of, and when such order of immunity is made, her constitutional privilege ceases."

Has not our juvenile court statute granted sufficient immunity as to fornication that the privilege is not available?

The third case is *State* v. *Learned,* 73 Kan. 328, 85 P. 293. The portion which the opinion quotes merely says that a girl under the age of 18 years may be guilty of the crime of incest. That much may be admitted as true in this state also, and since the crime would be a felony it would be cognizable in either the juvenile court or the district court. The case, therefore, does not help in determining this problem.

The other case referred to is *Ex parte Tahbel,* 46 Cal. App. 755, 189 P. 804. That case is likewise of but little help since there the crime for which the 15 year old boy was placed in an institution for boys by the juvenile court was a felony and against the argument that "the minor is not being prosecuted for any crime, and is in no danger of conviction of a public offense" (page 806 of 189 P.), the court replied by showing that he was also amenable to the courts since the statute provided as to juvenile courts that "if it shall determine that such minor is not a fit and proper subject to be dealt with under the provisions of the act [the juvenile court] 'may dismiss the petition therein, and direct that said person be prosecuted under the general law.'"

The juvenile court is not a criminal court. *Mill* v. *Brown,* supra; *People* v. *Lewis,* 260 N. Y. 171, 183 N. E. 353, 86 A. L. R. 1001. But are its processes nevertheless such as constitute "punishment" so as to raise a privilege in a witness against giving testimony criminatory as to an offense cognizable in the juvenile court? *People* v. *Lewis,* supra, does not discuss precisely the same question as is here raised, but the case holds of necessity that the action of the juvenile court is not punishment and that testimony making a witness amenable only to the juvenile court is not self-incriminating. The statutes there quoted show that the conception of the juvenile court is similar to the one expressed in *Mill* v. *Brown,* supra, characterizing our own system of handling juvenile delinquency. A boy was suspected of having stolen $12 and was brought into juvenile court where,

in response to questions, he confessed fully and frankly and was committed to the state school for boys. The court remarked that (page 354 of 183 N. E.) :

"If the hearing here had been a criminal trial, its sole defect would have been the failure to warn against self-incrimination. But it was not a criminal trial and there was no defect."

The court considered the matter fully and concluded that there was no error in the commitment. The opinion seems to rest partly on the basis that the proceeding before the juvenile court "was not a criminal trial" and therefore the witness could not claim the privilege vouchsafed by the New York State Constitution, Article 1, Section 6, which provides that:

"No person shall * * * be compelled in any criminal case to be a witness against himself."

But such a constitutional provision is uniformly interpreted to give protection to a person in any court proceedings, criminal or otherwise. *People* v. *Cummins*, 153 App. Div. 93, 138 N. Y. S. 517, affirmed 209 N. Y. 283, 103 N. E. 169; Wigmore, op. cit., Sec. 2252. Therefore the result would have been the same in *People* v. *Lewis*, supra, if the proceedings had been criminal, and the true reason for allowing the privilege must have been that self-exposure to juvenile court action was not self-incrimination.

It should be noted that this decision was five judges to two. The dissent is quoted at length by the applicants here, at pages 36-40 of their brief, and they rely almost exclusively on that dissent to establish their position. Nevertheless, I think the majority view was in harmony with and recognized the underlying principles and purposes applicable to juvenile courts. The court's opinion seems to ignore them. I therefore dissent from the conclusions that the witness in this case could be found guilty of a crime, or if not a crime that she could claim immunity because her answers might subject her to the supervisory jurisdiction of the juvenile court.